CORROON & BLACK OF ILLINOIS, INC., Plaintiff-Appellant, v. THOMAS J. MAGNER *et al.*, Defendants-Appellees.

First District (4th Division) No. 85—1900

Opinion filed June 5, 1986.—Rehearing denied July 9, 1986.

152

James E. O'Halloran, Jr., Clifford G. Kosoff, and Francis M. Donovan, all of O'Halloran, Lively & Walker, of Northbrook, for appellant.

Stephen C. Carlson and Donald A. Tarkington, both of Sidley & Austin, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Corroon & Black of Illinois, Inc., brought an action in the circuit court of Cook County against defendants, Thomas J. Magner and the Near North Insurance Agency, Inc. (hereinafter Near North). Plaintiff sought injunctive relief and damages from Magner because he allegedly (1) breached his fiduciary duty to plaintiff, (2) breached the restrictive covenant in his employment contract with plaintiff, and (3) interfered with plaintiff's business relationships. Plaintiff sought injunctive relief and damages from Near North because it allegedly (1) encouraged Magner to breach his fiduciary duty to plaintiff, (2) interfered with plaintiff's employment contract with Magner, and (3) interfered with plaintiff's business relationships. The trial court granted defendants' motion for summary judgment. Plaintiff now appeals, contending that the trial court erred in granting summary judgment for defendants.

We reverse and remand.

The record shows that plaintiff is an insurance broker and consultant, specializing in corporate insurance. Plaintiff consists of approximately 220 employees working at several locations in the Chicago area and is one of 25 subsidiaries of Corroon & Black Corporation in 30 States.

Plaintiff hired defendant Magner as an account executive on February 27, 1978. His principal responsibility was to service existing ac-

counts and generate new business. In return, Magner received a yearly salary of $30,000 plus a bonus for new accounts, use of a company car or reimbursement for mileage on his personal car, and partial payment of a membership in a country club.

Richard Schmidt, the president of plaintiff, testified in a deposition that he interviewed Magner for employment. Schmidt testified that he expressly told Magner during the interview that the company would require him to sign its standard employment agreement containing a restrictive covenant. Schmidt further testified that he explained to Magner how the restrictive covenant operated and that the covenant was similar to the one Magner had signed with his former employer.

Robert Margolis, then vice-president in charge of new business development, testified in an affidavit that he also separately interviewed Magner for a position. During this interview, he told Magner that the signing of the company's employment agreement containing the restrictive covenant was a prerequisite for employment. Margolis further testified that between February 28, 1978, and September 24, 1979, he told Magner to sign the agreement on 10 occasions, but that on each occasion Magner avoided signing it; and that Magner signed the agreement on September 24, 1979, after receiving an ultimatum from him.

In contrast, Magner testified in a deposition that although Schmidt and Margolis interviewed him they did not discuss the company's employment agreement. Magner testified that on September 24, 1979, Margolis presented him with the agreement for the first time and told him to sign and return it that afternoon. Magner further testified that he signed the agreement but did not review it in depth.

The restrictive covenant in the employment agreement provided in pertinent part:

"5) MAGNER agrees that he will not, without the prior written consent of Employer, during the term of this Agreement and for 24 months thereafter, except as may be required in the course of his employment hereunder:

* * *

(c) directly or indirectly solicit or accept insurance agency or brokerage business from, or perform any of the services included within the Corroon & Black Business for, any client of any Corroon & Black office in which MAGNER has worked."

Defendant Near North is a commercial insurance brokerage house

and one of plaintiff's competitors. Magner testified in his deposition that in January 1984 he approached Near North's president, Michael Segal, and indicated that he wished to leave plaintiff and join Near North.

Joseph Kurtiss is the corporate secretary and insurance manager of the Susquehanna Corporation (hereinafter Susquehanna). He testified in a deposition that in December 1983 or January 1984 Magner told him that he was considering leaving plaintiff. Kurtiss stated that Magner obtained Susquehanna's business on behalf of plaintiff on July 1, 1982. Kurtiss further testified that Magner contacted him in May 1984 and repeated his desire to leave plaintiff and join Near North. Magner then asked Kurtiss for permission to bring a representative of Near North to Susquehanna's corporate headquarters in Denver, Colorado, to discuss Near North. Kurtiss agreed.

Kurtiss further testified in his deposition that he, Magner, the vice-president of Near North, and the chief financial officer of Susquehanna attended the Denver meeting later in May 1984. They discussed the background and capabilities of Near North and its ability to service the Susquehanna account. Magner did not inform plaintiff of the Denver meeting.

The record shows that sometime in June 1984 Magner wrote Kurtiss advising Susquehanna on how to prepare notices to its insurance carriers that it was changing brokers. Later that month, Magner received these broker-of-record letters and directed Near North personnel to complete and mail them to Susquehanna's insurance carriers. Near North mailed the letters on June 29, 1984.

The record further shows that Magner resigned from plaintiff corporation in a letter dated June 30, 1984. Bruce O'Neil, president of plaintiff, received the letter on July 2, 1984. Alexander Irvine, executive vice-president of plaintiff, testified in a deposition that on July 2 or 3, Magner visited plaintiff's offices and, in his presence, spoke with O'Neil. Magner told O'Neil that he was taking his accounts with him to Near North. O'Neil reminded Magner of his employment agreement with plaintiff. Magner replied that the restrictive covenant was unenforceable and that he was taking his accounts with him.

After leaving plaintiff, Magner solicited and obtained for Near North the business of several clients whose accounts Magner had serviced while employed by plaintiff, including E. L. Industries, the Plumwood Corporation, Chessies, Inc., and Lennox Trucking.

On July 9, 1984, plaintiff filed motions for a temporary restraining order and a preliminary injunction, and a complaint seeking a permanent injunction and compensatory and punitive damages. The mo-

tions for a temporary restraining order and a preliminary injunction sought to enjoin Magner from violating the restrictive covenant by soliciting plaintiff's clients, and to enjoin Near North from using Magner in any way that would violate the restrictive covenant. Plaintiff's complaint for injunctive relief and damages consisted of five counts. Count I alleged that Magner breached his fiduciary duty to plaintiff; count III alleged that Near North tortiously encouraged Magner to breach his fiduciary duty to plaintiff; count II alleged that Magner breached his employment agreement with plaintiff; count IV alleged that Near North tortiously interfered with Magner's employment agreement; and count V alleged that both Magner and Near North tortiously interfered with plaintiff's business relationship with Susquehanna.

The trial court denied the motion for a temporary restraining order on the same day. Prior to the scheduled date for a hearing on the motion for a preliminary injunction, defendants moved for summary judgment on the complaint. After argument on the motion, the court orally ruled in favor of defendants on May 21, 1985. On June 11, 1985, the court entered a written order granting summary judgment for defendants on all counts of the complaint. Plaintiff filed a timely notice of appeal.

When a plaintiff appeals from a trial court's order of summary judgment for a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) If the documents that the trial court considers show that there is a material issue as to any material fact, summary judgment should not be granted. In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. If fair-minded persons could draw different conclusions from the evidence, the issues should be submitted to a jury to determine what conclusion seems most reasonable. Conversely, when the evidence shows that no material issue of fact has been raised, the moving party is entitled to judgment as a matter of law. (*Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 231-32, 450 N.E.2d 756, 758.) Because this is a drastic measure, a court may grant it only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right to judgment. *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958, 961.

## I

Counts I and III of plaintiff's complaint go to Magner's alleged breach of fiduciary duty to plaintiff and Near North's alleged tortious encouragement of Magner to breach that duty. The trial court expressly and specifically refused to make any findings on the issue. The court stated, in part:

"THE COURT: The finding with breach of fiduciary duty is not necessary to sustain the motion, in my view, to sustain the motion for summary judgment, and I, therefore, have not addressed myself to the question of breach of fiduciary duty. The factual assertions that are made from the portions of the depositions that have been included enclosed with the motion, I am not satisfied that there would be adequate material issues of fact to make, to conduct a trial with respect to the incurment or incursion of the other agency end [*sic*] of the alleged contract between Corroon & Black and Mr. Magner; so, therefore, that portion of the motion for summary judgment is also sustained.

The question of their active tortious interference with the alleged contract, which I suggest is not in fact a contract, but a subsequent post-employment covenant without consideration.

MR. O'HALLORAN [plaintiff's attorney]: What about the breach of fiduciary duty?

THE COURT: I am not making any comments with respect to the breach of fiduciary, I think the ruling is adequately sustainable with the comments to breach of fiduciary duty, that's the extent of the language you should include."

Plaintiff contends that the pleadings and other documents reveal genuine issues of material fact requiring a trial on the issues of Magner's alleged breach of fiduciary duty and Near North's alleged inducement of that breach. Magner contends that he was entitled to summary judgment on count I because plaintiff failed to provide evidence that his acts, while in plaintiff's employ, caused it to lose the Susquehanna account. Near North contends that it was entitled to summary judgment on count III because it did not encourage Magner to perform his alleged wrongful acts.

 While acting as an agent or employee of another, one owes the duty of fidelity and loyalty. Accordingly, a fiduciary cannot act inconsistently with his agency or trust; for example, an employee cannot solicit his employer's customers for himself. (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 683, 379 N.E.2d 1228, 1237.) However, an employee, absent a

restrictive contractual provision, has a right to enter into competition with the former employer upon leaving such employ. An employee may legitimately go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor. An employee is held accountable for breaching his fiduciary duty to his employer only when he goes beyond such preliminary competitive activities and commences business as a rival concern while still in his employer's service. *Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 733-34, 451 N.E.2d 1338, 1349.

■ Further, " '[a] third person who has colluded with a fiduciary in committing a breach of duty, and who obtained a benefit therefrom, is under a duty of restitution to the beneficiary.' " (*Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 565, 402 N.E.2d 181, 186, quoting the Restatement of Restitution sec. 138(2) (1937).) A third party's inducement of, or knowing participation in, a breach of duty by an agent is a wrong against the principal that may subject the third party to liability. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 454, 411 N.E.2d 1067, 1070.) Defendants attempt to limit the applicability of these authorities to public officials violating their duties of public office. However, both *Chicago Park District* and *Village of Wheeling* cite numerous authorities not involving public officials for this general principle. Restatement of Restitution sec. 138(2) (1937); Restatement (Second) of Trusts sec. 326 (1959); *Jaclyn, Inc. v. Edison Brothers Stores, Inc.* (1979), 170 N.J. Super. 334, 368, 406 A.2d 474, 491; *Martin Co. v. Commercial Chemists, Inc.* (Fla. App. 1968), 213 So. 2d 477, 480.

■ Applying these principles to the case at bar, we conclude that counts I and III of plaintiff's complaint contain genuine issues of material fact. Illinois law recognizes actions for breach of fiduciary duty and a third party's inducement of a breach of duty. (*Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 733-34, 451 N.E.2d 1338, 1349; *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 565, 402 N.E.2d 181; *Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 454, 411 N.E.2d 1067.) The trial court, however, inexplicably refused to make any finding as to those issues. Contrary to defendants' assertions, the record contains evidence tending to show that Magner's acts caused plaintiff to lose the Susquehanna account while still in plaintiff's employ. The record also contains evidence tending to show that near North encouraged Magner to breach his duty. The issue of whether Near North intended to induce Magner's breach of duty requires a full hearing because summary judgment is particularly inappropriate where the parties seek to draw inferences

on questions of intent. (*Lundin v. Egyptian Construction Co.* (1975), 29 Ill. App. 3d 1060, 1064, 331 N.E.2d 208, 211.) We hold that the trial court erred in granting defendants' motion for summary judgment on counts I and III of plaintiff's complaint.

## II

Counts II and IV of plaintiff's complaint go to Magner's alleged breach of their employment agreement and Near North's alleged tortious interference with that agreement. The trial court ruled that the restrictive covenant was unenforceable because (A) the agreement lacked consideration because Magner did not sign it until after he began his employment with plaintiff, (B) plaintiff did not have a protectable proprietary interest in its customers, and (C) the scope of the restrictive covenant was unreasonably broad.

■■ ■ The question of whether a restrictive covenant is enforceable is one of law. Because such covenants operate at least as partial restraints of trade, courts scrutinize them carefully to ensure that their intended effect is not the prevention of competition *per se*. However, where a party to a contract agrees, in exchange for certain benefits, to refrain from competing with his or her employer following discharge, and where the time and territorial limitations of the agreement as well as its effect upon the parties and the public are reasonable, then its enforcement by injunction is customary and proper. The basic test that Illinois courts apply is whether the covenant is reasonably necessary to protect the employer from improper or unfair competition, depending on the facts of each case. *The Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 891-92, 480 N.E.2d 1273, 1279.

## (A)

■■ Plaintiff contends that genuine issues of material fact exist on the issue of whether its employment agreement with Magner contains an enforceable restrictive covenant. Defendants agree with the trial court that the agreement lacked consideration and, thus, is unenforceable.

Defendants correctly cite the general rule that a valid consideration, flowing from both parties, is one of the essential requirements for the formation of a contract. A promise to do something one is already obligated to do is no consideration and creates no new obligation. An executory contract without consideration is unenforceable either at law or in equity. (*Moehling v. W. E. O'Neil Construction Co.* (1960), 20 Ill. 2d 255, 265-66, 170 N.E.2d 100, 106.) Defendants con-

tend that the employment agreement lacked consideration because Magner was already in plaintiff's employ when he signed it. Since he received nothing from plaintiff in return for signing the agreement, it is executory and, thus, unenforceable.

This court recently held, however, in *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306, that continued employment for a substantial period is sufficient consideration to support an employment agreement. In *McRand*, defendants did not sign employment agreements containing restrictive covenants when plaintiff hired them, but, rather, two years before they resigned. The *McRand* court found that Illinois courts have long signaled support for the rule of continued employment for a substantial period as consideration to support an employment agreement. The court reasoned that if it held the consideration insufficient, it would force plaintiff to discharge defendants one day and rehire them the next day after they signed the agreement. 138 Ill. App 3d 1045, 1055-56, 486 N.E.2d 1306.

██ Applying these principles to the instant case, we conclude that, as a matter of law, sufficient consideration exists to support the employment agreement between plaintiff and Magner. The record shows that Magner signed the agreement on September 24, 1979, and resigned on June 30, 1984. Thus, plaintiff gave to Magner four years of continued employment in exchange for signing the agreement. We hold that the trial judge erred in ruling that the employment agreement between plaintiff and Magner lacked consideration.

(B)

Plaintiff claims that genuine issues of material fact exist on the question of whether it held a protectable propriety interest in its customers. Defendants agree with the trial court that plaintiff did not possess such an interest.

██ While it is true that ordinarily an employer has no proprietary interest in its customers, this court has repeatedly held that there are two general situations in which the law would find such an interest to exist for purposes of enforcing a covenant not to compete: (1) where the former employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit, and (2) where, by nature of the business, the customer relationship is near-permanent and, but for his association with plaintiff, defendant would not have had contact with the customers in question. (*The Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 892, 480 N.E.2d 1273, 1279.) Plaintiff contends that its relationship with its customers is near-permanent.

■■■ Our courts have used many objective factors in determining whether a near-permanent relationship exists between an employer and its customers. They are: (1) the number of years the employer required to develop the clientele, (2) the amount of money the employer invested in developing the clientele, (3) the degree of difficulty in developing the clientele, (4) the amount of personal client contact by the employee, (5) the extent of the employer's knowledge of its clientele, (6) the length of time the customers have been associated with the employer, and (7) the continuity of the relationship between the employer and its customers. *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1051-53, 486 N.E.2d 1306, 1311-12

■■■ Applying the above principles to the case at bar, we hold that the question of plaintiff's protectable proprietary interest in its customers contains a genuine issue of material fact. The record contains conflicting deposition testimony addressing the continuity of the relationship between plaintiff and its customers. Thus, summary judgment is inappropriate. Additionally, plaintiff produced testimony addressing its investment in developing its clientele, the extent of its employees' personal customer contact, and the extent of its knowledge of its customers. The record lacks sufficient evidence addressing these factors to make defendants' right to summary judgment clear and free from doubt.

■■■ Further, defendants contend that, as a matter of law, there are no protectable business interests in the insurance industry that require or justify a restrictive covenant. In *American Hardware Mutual Insurance Co. v. Moran* (7th Cir. 1983), 705 F.2d 219, the United States Court of Appeals for the Seventh Circuit noted that Illinois law finds a protectable proprietary interest in an employer's customers when the relationship between the employer and its customers is near-permanent. Contrary to defendants' assertions, the court in *American Hardware* did not hold that restrictive covenants were unenforceable in the insurance industry as a matter of law. Rather, the court found that plaintiff lacked the goodwill that indicated a near-permanent relationship with its customers. 705 F.2d 219, 222.

Defendants additionally contend that in *Corroon & Black-Rutters & Roberts, Inc. v. Hosch* (1982), 109 Wis. 2d 290, 325 N.W.2d 883, the supreme court of Wisconsin refused to enforce a restrictive covenant in the insurance industry. Defendants misread the case. There, the enforceability of a restrictive covenant was not at issue; rather, the issue was whether a customer list constituted a protectable trade secret in the absence of a restrictive covenant. (109 Wis. 2d 290, 293, 325 N.W.2d 883, 885.) Further, we have enforced restrictive covenants in

the insurance industry. (See *Frank B. Hall & Co. v. Payseur* (1979), 78 Ill. App. 3d 230, 396 N.E.2d 1246.) We hold that the trial court erred in ruling that no genuine issues of material fact existed as to plaintiff's protectable proprietary interest in its customers.

## (C)

▇▇ Plaintiff claims that the trial court erred in ruling that the scope of the restrictive covenant was unreasonably broad. Defendants agree with the trial court, contending that the covenant was unreasonably broad and, thus unenforceable.

We have held repeatedly that the absence of a geographic limitation in a restrictive covenant limited to the nonsolicitation of customers was not unreasonably where the employer did business throughout the country, and the covenant was to protect the employer from losing customer contracts through a former employee's knowledge and familiarity with the customer's requirements. (*J. D. Marshall International, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 122, 409 N.E.2d 4, 7.) Although these restrictive covenants contained no geographic limitation, they restrained the employees only from contacting former clients. Activity restraints are subject to a less stringent test of reasonableness than that which applies to geographical restraints. *Dryvit System, Inc. v. Rushing* (1985), 132 Ill. App. 3d 9, 14, 477 N.E.2d 35, 39.

▇▇ While courts have approved activity restrictions, the restrictions must be reasonably related to the employer's interest in protecting the customer relations than its employees developed as a direct result of the employment. Courts are hesitant to enforce prohibitions against an employee's servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while in plaintiff's employ. *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1057, 486 N.E.2d 1306, 1315; *Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793, 798-99, 483 N.E.2d 999, 1003.

The restrictive covenant in the present case prohibits Magner from soliciting "any client of any Corroon & Black office in which [he] has worked." Defendants contend the activity restraint here is unreasonably broad because it prohibits solicitation of all of plaintiff's customers and not merely those with whom Magner had contact.

In *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21, our supreme court stated: "While we do not hold that a court of equity may never modify the restraints embodied in a contract of this type and enforce them as modified, the fairness of the

restraint initially [proposed] is a relevant consideration to a court of equity." 37 Ill. 2d 32, 39, 225 N.E.2d 21, 25.

■■■ Thus, a court may modify a motion for a preliminary injunction in some circumstances. The court is not required to follow the terms of the covenant exactly in issuing an injunction, especially where, as here, the covenant states that the terms are severable. The trial court may properly enjoin only activities involving the employer's customers with whom the former employees had been involved during their employment. *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1058, 486 N.E.2d 1306, 1315-16.

■■■ The record shows that plaintiff sought limited enforcement of the restrictive covenant, only as to plaintiff's clients with whom Magner had contact during his employment. On remand, the trial court should determine whether Magner had contact with such a large percentage of customers as to require prohibition from soliciting or furnishing services to any of plaintiff's clients of the office in which he worked. If this is not necessary to maintain the status quo, the trial court should exercise its discretion in modifying the language of the activity restriction appropriately. (*McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1058, 486 N.E.2d 1306.) We hold that the trial court erred in granting defendants' motion for summary judgment on counts II and IV of plaintiff's complaint.

### III

Count V of plaintiff's complaint goes to defendants' alleged tortious interference with the business relationship between plaintiff and Susquehanna. The trial court did not address this count in granting defendants' motion for summary judgment.

■■■ The theory of the tort of interference is that the law draws a line beyond which no member of the community may go in intentionally intermeddling with the business affairs of others; that if the alleged tortious acts do not rest on some legitimate interest, or if the defendant deals sharply or overreaches or exhibits other conduct below the behavior of fair persons similarly situated, then he or she should redress the ensuing loss; and that the line between permissible behavior and interference reflects the ethical standards of the community. (*City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 362-63, 300 N.E.2d 331, 333.) Illinois has long recognized this tort. 13 Ill. App. 3d 359, 363, 300 N.E.2d 331, citing *Doremus v. Hennessy* (1898), 176 Ill. 608, 615, 52 N.E. 924, 926.

■■■ The elements of the tort are: (1) the existence of a valid and enforceable contract between a plaintiff and another; (2) the defend-

ant's awareness of this contractual relation; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages. *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 551, 413 N.E.2d 98, 101.

However, unlike the right to receive the benefits of a contract, the right to engage in a business relationship is not absolute, and must be exercised with regard to the rights of others. The rights of others most commonly take the form of lawful competition, which constitutes a privileged interference with another's business. *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 552, 413 N.E.2d 98.

An individual with a prospective relationship has a mere expectancy of future economic gain; a party to a contract has a certain and enforceable expectation of receiving the benefits of the contract. When a business relationship affords the parties no enforceable expectations, but only the hope of continued benefits, the parties must allow for the rights of others. They, therefore, have no cause of action against a *bona fide* competitor unless the circumstances indicate unfair competition, *i.e.*, an unprivileged interference with prospective advantage. As the degree of enforceability of a business relationship decreases, the extent of permissible interference by an outsider increases. *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547, 552-53, 413 N.E.2d 98.

Plaintiff concedes that its contract with Susquehanna was terminable at will. Thus, their relationship provided no enforceable expectations but only the hope of continued benefits and, under *Belden Corp.*, must allow for lawful competition. However, plaintiff contends that a genuine issue of material fact exists as to whether defendants' actions amounted to unfair competition or unprivileged interference. Defendants contend that plaintiff had no business relationship with Susquehanna; rather, the relationship was between Magner and Susquehanna. Defendants further contend that even if plaintiff had a business relationship with Susquehanna, their acts amounted to legitimate business competition.

After reviewing the record, we concluded that genuine issues of material fact exist as to whether defendants' conduct amounted to unfair competition. The record contains evidence showing that the Susquehanna account belonged to plaintiff and not to Magner. Further, the Restatement of Torts lists the four requirements necessary to establish the aforementioned defense of privilege. One requirement is that the actor must not use improper means in com-

peting with his or her competitor. Restatement of Torts, sec. 768(2), at 49 (1939).

A breach of fiduciary duty is an improper means. Thus, our earlier conclusion that genuine issues of material fact exist as to Magner's alleged breach of fiduciary duty to plaintiff requires us to conclude that the question of defendants' conduct amounting to unfair competition also contains genuine issues of material fact (*Smith-Shrader Co. v. Smith* (1985), 136 Ill. App. 3d 571, 579-80, 483 N.E.2d 283, 289-90). We hold that the trial court erred in granting defendants' motion for summary judgment on count V of plaintiff's complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for a hearing on the preliminary injunction and for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LINN, P.J., and McMORROW, J., concur.