AGRIMERICA, INCORPORATED, Plaintiff-Appellant, v. VERNON L. MATHES *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 87—2653

Opinion filed May 10, 1988.—Modified on denial of rehearing June 21, 1988.

Vedder, Price, Kaufman & Kammholz, of Chicago (Richard F. Zehnle and John E. Dougherty, of counsel), for appellant.

Alexander, Unikel, Zalewa & Tenenbaum, of Chicago, and David E. Stahl, of Marietta, Georgia (Marvin A. Tenenbaum, of counsel), for appellee Vernon L. Mathes.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Agrimerica, Inc. (Agrimerica), claims error in the dismissal of its motions for a temporary restraining order, reconsideration of the court's denial thereof, and a preliminary injunction. For the reasons which follow, we reverse and remand with directions.

Agrimerica, a Delaware corporation with its principal place of business in Northbrook, Illinois, manufactures flavoring ingredients, mold inhibitors and surfactants for animal feed and sells them to large-scale animal feed producers. On October 23, 1984, it hired defendant Vernon Mathes (Mathes) to sell its products in Florida, Georgia and Alabama, based upon a written employment agreement, signed on December 17, 1984, pursuant to which he promised:

> "Following the termination of Employee's employment by Agrimerica for any reason (including resignation), for a period that is the lesser of 24 months or a period equal to the number of full months he/she was employed by Agrimerica, Employee will not in any way, directly or indirectly (as detailed in the preceding paragraph), promote, sell or attempt to sell, in the Sales

Region, any product or service that is in any way competitive with Agrimerica's Business to any person or entity that has been a customer of Agrimerica within two years prior to the date on which Employee's employment with Agrimerica terminated."

Mathes was an Agrimerica salesperson in the three-State region until terminated on March 30, 1987, following a restructuring of the company's sales organization. In May 1987, Far-Mor Flavor Company (Far-Mor), a division of defendant FMF International, Inc., and an Agrimerica competitor, hired Mathes to sell its products in the southeastern United States and "parts of the midwest," but primarily in Georgia, Florida, Alabama and Mississippi. According to certain evidence, Far-Mor hired Mathes in part because of customer contacts he developed during his tenure with Agrimerica, and Mathes solicited orders from several customers he serviced while employed by Agrimerica.

Filed on July 20, 1987, Agrimerica's two-count, verified amended complaint and a separate motion for a temporary restraining order, alleged that: Mathes' contacts with its customers in Georgia, Florida and Alabama violated his employment agreement; and Far-Mor "intentionally *** interfered" with Mathes' employment contract, thereby "unfairly compet[ing]" with Agrimerica and leading Mathes to breach the nonsolicitation covenant. Agrimerica sought: (1) an accounting and money damages from each defendant; (2) a temporary restraining order and preliminary and permanent injunctions to enjoin Mathes from breaching the terms of his employment agreement and from disclosing confidential information learned while employed by Agrimerica; and (3) a temporary restraining order and preliminary and permanent injunctions. The latter relief sought to enjoin Far-Mor from interfering with the employment agreement, inducing or encouraging Mathes to breach that agreement, and using any confidential information learned from Mathes concerning Agrimerica operations.

Far-Mor's answer and response to the motion for a temporary restraining order, filed the same day, admitted it hired Mathes; admitted Mathes contacted Agrimerica customers in his capacity as a Far-Mor salesperson; but denied the existence of Agrimerica's alleged proprietary interest in its customers.

At a hearing on July 20, 1987, Mathes, a Georgia resident, moved unsuccessfully to quash the amended complaint for lack of personal jurisdiction. Stating that "there may well be an adequate remedy at law," the court also denied the motion for a temporary restraining order and set a date for a preliminary injunction hearing.

On July 24, 1987, Agrimerica sought reconsideration of denial of its motion for a temporary restraining order, which was denied that day.

Mathes' answer, filed on August 4, 1987, denied the validity and enforceability of the employment agreement; sought dismissal of the amended complaint; and raised several affirmative defenses and counterclaims.

Following an evidentiary hearing on August 19, 1987, the circuit court granted defendants' motion for a finding favoring defendants and denied the motion for a preliminary injunction. The court observed that no formulas or trade secrets came into Mathes' possession; expressed skepticism as to whether Agrimerica possessed an interest worthy of protection; and further stated that, even if an interest meriting protection existed, Agrimerica adduced evidence "woefully" inadequate to demonstrate the presence of that interest. The court also found the employment contract unenforceable.

By an "Amended Notice of Interlocutory Appeal" filed September 16, 1987, Agrimerica requests reversal of the July 20, July 24 and "July" [*sic*] 19, 1987, orders, denying the company's petitions for injunctive relief.

I

We initially note that Agrimerica characterizes the issues on appeal as whether the court abused its discretion in denying its motions for a temporary restraining order, reconsideration of the denial of the motion for a temporary restraining order, and a preliminary injunction.

The result of a preliminary injunction hearing supersedes the disposition of motions concerning a temporary restraining order, which is merely an interim measure to maintain the status quo until the court can conduct a preliminary injunction hearing. (*Peoples Gas Light & Coke Co. v. City of Chicago* (1983), 117 Ill. App. 3d 353, 355, 453 N.E.2d 740.) This court's determination of whether the circuit court abused its discretion in denying the motion for a preliminary injunction controls the outcome of this appeal and renders a decision on the remaining issues superfluous.

II

A successful movant for a preliminary injunction must show: (1) the existence of a right or interest which may be legally protected; (2) irreparable injury should the injunction be refused; (3) no adequate remedy at law; (4) a likelihood of success on the merits; and

(5) that the benefits of granting injunctive relief outweigh any possible injury to defendants as a result thereof. (*Gannett Outdoor v. Baise* (1987), 163 Ill. App. 3d 717, 721, 516 N.E.2d 915; *A. B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 791, 514 N.E.2d 45.) Because the grant or denial of injunctive relief is addressed to the circuit court's sound discretion, its findings will be disturbed only when against the manifest weight of the evidence, demonstrating an abuse of discretion. *A. B. Dick Co. v. American Pro-Tech,* 159 Ill. App. 3d at 791-92; *Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1144-45, 441 N.E.2d 927.

■ Whether a preliminary injunction should have been granted under the facts of the present case is dependent upon the enforceability of the nonsolicitation covenant and the existence of an interest subject to protection. (*McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1051, 486 N.E.2d 1306.) In ruling that the company lacked an interest worthy of protection, the circuit court appeared to be influenced by testimony that no secret formulas were compromised by Mathes' departure from Agrimerica. Our courts, however, recognize proprietary interests distinct from trade secrets such as an interest in confidential information learned by the employee as a result of his employment and subsequently used for his own benefit. *A. B. Dick Co. v. American Pro-Tech,* 159 Ill. App. 3d at 792; *Corroon & Black of Illinois, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, 163, 494 N.E.2d 785.

■ In the case *sub judice,* Agrimerica failed to demonstrate a proprietary interest in confidential information concerning its products and customers. At the preliminary injunction hearing, testimony revealed that Mathes was not privy to the formulas used in manufacturing specialty ingredients. Moreover, although all Agrimerica employees in the Northbrook office sign some form of a restrictive covenant, Kurt Marquardt, Agrimerica's director of sales, and William Tribble, its president, admitted that names of animal feed manufacturers, such as those who buy Agrimerica products, are available in various trade publications; Agrimerica maintains neither a single nor a confidential list of customer names; and all employees have access to the names and addresses of purchasers of Agrimerica goods. No interest in customer identity is recognized for protective purposes where the customer list is not kept secret. *American Claims Service, Ltd. v. Boris* (1985), 137 Ill. App. 3d 948, 951-52, 485 N.E.2d 534; see also, *Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 892-93, 480 N.E.2d 1273.

■ A proprietary interest also may be recognized in "near-per-

manent" customer relationships, however, the existence of which are determined by certain objective factors, namely: (1) the number of years required to develop the clientele; (2) the amount of money invested to acquire clients; (3) the degree of difficulty in acquiring clients; (4) the extent of personal customer contact by the employee; (5) the extent of the employer's knowledge of its clients; (6) the duration of the customers' association with the employer; and (7) the continuity of employer-customer relationships. *A. B. Dick Co. v. American Pro-Tech,* 159 Ill. App. 3d at 793; *McRand, Inc. v. van Beelen,* 138 Ill. App. 3d at 1051-53.

Here, Marquardt testified that it is "nearly impossible" to make a sale on the first call to a customer; salespeople instead need 6 to 12 months to gain a customer's confidence and convince him to try an Agrimerica product. Agrimerica also made an offer of proof that an additional year is necessary "to establish a substantial amount of business" with a client.

Concerning company investments to develop its client base, Marquardt and William Tuttle, Agrimerica's director of technical services, explained a two-step process necessary to attract customers: (1) a perceived need for the product must be created in the potential customer's mind by Agrimerica salespeople; and (2) Agrimerica's attempts to win the client with its research data. In this context, "research" means mixing, in various combinations, Agrimerica products with a customer's feed to demonstrate the efficacy of the additives. Agrimerica often permits a client to design his own product test so that "[the customer obtains] results which are valuable and meaningful to [him]." Tribble averred that the company spent approximately $300,000 in 1985 and $400,000 in 1986 on research. Tuttle described events which presumably cause the company to incur additional costs, such as compiling in-house technical manuals for its salespeople, sending technical staff members into the field to present data and demonstrate its practical application, and conducting biannual sales meetings to explain current and planned research projects to the sales staff.

Marquardt further testified that Agrimerica salespeople contact established customers approximately once a month; potential customers receive fewer calls. All client contacts, by phone or in person, are recorded in company "call reports." Mathes admitted that each of the 510 call reports he completed during his employment represented at least one call on a customer. Mathes also said that he acted as the "key contact" between Agrimerica and its clients in the three-State region and that he developed "close, personal relationships" with

some of those customers.

Agrimerica's knowledge of its customers extends beyond information gathered for research purposes, according to the evidence. For example, Marquardt stated that the company's sales trainees receive data concerning their customers' prior relationship with Agrimerica; learn how to demonstrate Agrimerica ingredients; and learn to act as "troubleshooters," identifying and correcting problems clients develop with the specialty items. Furthermore, Mathes received four or five days of initial training at the Northbrook office before embarking on any sales calls and was accompanied for an additional week by his sales manager, who introduced Mathes to "key personnel" of existing Agrimerica customers.

■ Addressing the continuity of customer relationships, Mathes named three customers who ordered Agrimerica ingredients for less than three years; however, Tribble averred that "several" Agrimerica clients were "long-term" and that some had purchased from Agrimerica for over 30 years.

"Near-permanent" customer relationships also require a showing that, but for the employment in question, the employee would not have come into contact with the employer's customers. (*Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill. App. 3d at 163; *McRand, Inc. v. van Beelen*, 138 Ill. App. 3d at 1053; *Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d at 892.) Mathes asserted that he worked as a salesman of specialty feed ingredients before his tenure with Agrimerica, and his resume lists several positions held before 1984 related to the animal feed industry, although the products produced by the individual companies are not identified. Mathes admitted, however, that he never personally ventured to Georgia, Florida, or Alabama to sell feed flavorings, mold inhibitors or surfactants prior to his employment by Agrimerica. This fact, in addition to the regular contacts between Agrimerica and its clients and the company's "storehouse of intimate knowledge of customer requirements," sufficiently demonstrates "near-permanent" customer relationships for which the law will provide protection. See *McRand, Inc. v. van Beelen*, 138 Ill. App. 3d at 1051-53; see also *A. B. Dick Co. v. American Pro-Tech*, 159 Ill. App. 3d at 793.

■ Having identified an interest amenable to protection, we next consider the reasonableness of the nonsolicitation covenant in terms of its impact on the parties and the public, and upon which is conditioned its enforceability. (*A. B. Dick Co. v. American Pro-Tech*, 159 Ill. App. 3d at 792; *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 218, 363 N.E.2d 6.) Here, Tribble asserted that, of the 200 potential cus-

tomers in the three-State region serviced by Mathes, Agrimerica sold products to approximately 35; furthermore, Mathes' new sales territory with Far-Mor exceeds Florida, Georgia and Alabama. The contract terms preclude Mathes merely from contacting less than one-fourth of the region's potential customers and are therefore not unduly restrictive in limiting to whom Mathes may sell during the life of the covenant. See *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 643, 425 N.E.2d 1060.

Nor would the public be likely to suffer as a consequence of the covenant's enforcement. Testimony adduced at the hearing concerning competitive pricing in the industry and the difficulty of obtaining new customers indicates that other companies exist to fill the demand for flavorings, mold inhibitors and surfactants. See *Tower Oil & Technology Co. v. Buckley,* 99 Ill. App. 3d at 642; *Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 506-07, 392 N.E.2d 1148; *Booth v. Greber,* 48 Ill. App. 3d at 220-21.

■ The covenant is similarly reasonable in its geographic and time limitations. Mathes is excluded only from territory in which he established contacts with Agrimerica customers (*McRand, Inc. v. van Beelen,* 138 Ill. App. 3d at 1058; *Instrumentalist Co. v. Band, Inc.,* 134 Ill. App. 3d at 895), and then only for two years. This period is not burdensome in light of evidence that two years are often necessary to establish a buyer-seller relationship (see *McRand, Inc. v. van Beelen,* 138 Ill. App. 3d at 1058-59; *Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 730, 451 N.E.2d 1338; *Tower Oil & Technology Co. v. Buckley,* 99 Ill. App. 3d at 644).

■ Agrimerica aptly contends that the covenant is an "activity" covenant, designed not to restrict competition, but rather to protect Agrimerica's relationship with its customers. (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 379, 422 N.E.2d 1034.) Such covenants do not require geographic limitations (*Corroon & Black of Illinois, Inc. v. Magner,* 145 Ill. App. 3d at 165; *Morrison Metalweld Process Corp. v. Valent,* 97 Ill. App. 3d at 379), but must be related reasonably to the employer's interest in protecting customer relations that its employees developed as a direct result of the employment. (*Corroon & Black of Illinois, Inc. v. Magner,* 145 Ill. App. 3d at 165.) In this case, the covenant clearly restricts nonsolicitation only to those entities in Mathes' sales region which were actual Agrimerica customers in the two years preceding his termination.

■ As to the remaining requirements in the preliminary injunction test, once an interest susceptive to protection is established, injury to the plaintiff is presumed where that interest remains unpro-

tected. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 294, 389 N.E.2d 1300; *Gannett Outdoor v. Baise,* 163 Ill. App. 3d at 722; *A. B. Dick Co. v. American Pro-Tech,* 159 Ill. App. 3d at 794; *McRand, Inc. v. van Beelen,* 138 Ill. App. 3d at 1054.) The presumption is reinforced in this case by the testimony of Mathes and David Decker, president of Far-Mor, that Mathes has, since his employment by Far-Mor, actively solicited orders from customers he serviced while with Agrimerica, with no indication that he intends to stop doing so. See *Falcon, Ltd. v. Corr's Natural Beverages, Inc.* (1987), 165 Ill. App. 3d 815, 821; *Prentice Medical Corp. v. Todd* (1986), 145 Ill. App. 3d 692, 700-01, 495 N.E.2d 1044.

■■■ ■ A remedy at law is adequate when shown to be clear, complete and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. (*A. B. Dick Co. v. American Pro-Tech,* 159 Ill. App. 3d at 794.) The circuit court here denied Agrimerica's request for injunctive relief in part because it believed an accounting by defendants was possible and would sufficiently cure Agrimerica's alleged injury. Lost profits are often calculable; however, even if the court could determine the precise level of pecuniary damage to Agrimerica, it could not compensate the loss of competitive position sustained during the several weeks before Agrimerica discovered Mathes was attempting to lure its customers to Far-Mor. (*Cross Wood Products, Inc. v. Suter,* 97 Ill. App. 3d at 286.) In addition, continued contacts by Mathes could result in damage extending far beyond the time restriction enunciated in the covenant; the two years needed to solidify initial customer relationships may be again required to win back a former client lost to Far-Mor as a result of Mathes' advances. *A. B. Dick Co. v. American Pro-Tech,* 159 Ill. App. 3d at 794; *Cross Wood Products, Inc. v. Suter,* 97 Ill. App. 3d at 286.

■■■ ■ To establish a likelihood of success on the merits, Agrimerica need raise only a fair question as to the existence of the right or interest claimed and, probably, that it will be entitled to injunctive relief if its allegations are proved. (*A. B. Dick Co. v. American Pro-Tech,* 159 Ill. App. 3d at 791; *McRand, Inc. v. van Beelen,* 138 Ill. App. 3d at 1050.) Significantly, most of the testimony presented at the preliminary injunction hearing was uncontradicted, including evidence concerning the number of Agrimerica customers, duration of their relationship with the company, use of research data to tailor Agrimerica additives to customer needs, amount of money invested in that research, role of the salesperson in establishing and maintaining attentive customer service, extent of Mathes' contacts with customers

during his tenure at Agrimerica, and Mathes' contacts with Agrimerica customers after the termination of his employment. This evidence is more than adequate to raise a fair question as to the existence of a proprietary interest in Agrimerica's customers which may be subject to legal protection and a likelihood of success in seeking injunctive relief. Where, as here, a fair question as to such an interest is raised and the covenant's terms are reasonable, the likelihood of prevailing on the merits is established; therefore, the circuit court abused its discretion in denying Agrimerica's motion for a preliminary injunction. *McRand, Inc. v. van Beelen,* 138 Ill. App. 3d at 1059.

Accordingly, we reverse and remand the circuit court's order of August 19, 1987, with directions to continue the preliminary injunction hearing so as to allow defendants to offer evidence in their cases and for further proceedings consistent with this opinion.

Reversed and remanded with directions.

SCARIANO and EGAN, JJ., concur.