**KAESER & BLAIR, INC., Plaintiff,**

v.

**Noah WILLENS and The Incentive Network, Ltd., Defendants.**

**No. 92 C 8019.**

United States District Court, N.D. Illinois, E.D.

May 25, 1993.

---

**1230**

Daniel Thomas Hartnett, Martin, Brown, Sullivan & Bowman, Chicago, IL, Edward E. Santen, Santen & Hughes, Cincinnati, OH, for Kaeser & Blair Inc.

John M. Foley, Alan R. Dolinko, Chuhak & Tecson, Chicago, IL, for Noah Willens and Incentive Network, Ltd.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Kaeser & Blair, Inc. ("Kaeser") brings this diversity action against Noah Wil-lens and The Incentive Network, Ltd. ("Incentive Network"), asserting ownership rights to a list of commissioned, independent sales agents purchased from Wilco Calendar and Advertising Specialty Company ("Wilco") and Kling Advertising Specialties and Calendars, Inc. ("Kling"). Presently before the court is defendants' motion for summary judgment on Counts II and III of Kaeser's complaint and, as explained below, the motion is denied.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### II. Background

Each of the corporate entities associated with this lawsuit are, or were, engaged in the specialty advertising business. Specialty advertising items include coffee cups, pencils, calendars and the like, emblazoned with a company's logo or slogan. As is custom within the industry, specialty advertising businesses do not directly solicit orders from companies seeking their services. Rather, they rely on independent, commissioned sales agents who solicit the orders, forwarding them to the specialty advertising business. The specialty advertising business would produce the ordered items and ship them directly to the customer. The customer would pay

the specialty advertising business, which in turn remits a commission to the agent who originally solicited the order.

Both Wilco and Kling were founded by David L. Willens and incorporated in Illinois. Upon his death, on August 20, 1986, David Willens left all of his stock in Wilco and Kling to his wife, Rita Jacobs Willens. Rita Willens, who apparently had no desire to continue her husband's business, sold to Kaeser for consideration of $360,000 "[a] list of all the independent contractors who have been serving as commission sales agents for [Wilco and Kling]." The contract provided that Wilco, Kling and Rita Willens as sellers warranted that they "have full and exclusive authority to sell the [list]." Further, Wilco, Kling and Rita Willens represented that they "intend to terminate their commissioned sales business immediately ... [and] agree that they will not use, sell or give away, either directly or indirectly, the ... listees." Likewise, Wilco, Kling and Rita Willens agreed "that for a period of five (5) years after the date of this instrument [October 29, 1986], they will not, within the United States of America, ... engage directly or indirectly in any distribution of advertising specialties business." Shortly after the sale, on September 2, 1987, Rita Willens voluntarily dissolved both Wilco and Kling.

Noah Willens, David and Rita Willens' son, founded and incorporated Incentive Network on July 20, 1989. Noah Willens previously served as an officer of both Wilco and Kling, and participated in the post-contract transition to Kaeser, sending a notice to all listees and forwarding various orders received by Wilco and Kling to Kaeser. Incentive Network is now engaged in the same business as Wilco and Kling, selling the same products in the same manner. In order to enlist the services of independent sales agents, on approximately March 20, 1992, Noah Willens mailed the following solicitation letter to nearly all individuals on the list sold to Kaeser:

Dear [Listee]:

Let me take a moment to reintroduce myself. My name is Noah Willens, the son of the late David Willens. As you will recall, David was the president of Wilco Advertising Specialty Company. He and I had worked side by side for many years in the business. After a long and valiant fight with lung cancer David passed away in 1986. For various personal reasons I and my family decided to close the company.

Alas, I found that I could not and did not want to get the business out of my blood! So, in 1989 I reopened the company under the name of the Incentive Network Ltd. Due to a legal obligation I could not contact you until now to give you the great news.

[Listee], as I recall, you were a very valuable asset to the Wilco family. I would be truly honored if you would consider the possibility of rejoining our Advertising Specialty House! You will find The Incentive Network to be an extremely friendly, warm, sincere and family oriented business. Just exactly the same qualities that David fought to maintain as President of Wilco.

In this day and age of huge corporations and computerization we can loose track of the fundamental concept that the people that make up the company are human beings! Although The Incentive Network is a highly organized, professional and computerized company, you will always be treated as a cherished member of the family, not a number in the crowd!

As an added incentive for you to "come home" I would like to extend a very special offer. Rather than the usual 50/50 split of gross profit, you can permanently receive 55% of the gross profit with The Incentive Network! Please examine the enclosed commission code sheet and compare this to what you are currently receiving in commissions.

[Listee], it would be my pleasure to speak with you personally to answer any questions you may have! Please use our toll free number,....

I truly hope to hear from you in the very near future!

Cordially,

/s/ Noah Willens

President

Kaeser filed the instant action against Noah Willens and Incentive Network on December 8, 1992. Count I alleges a violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* Kaiser asserts in Count II of its complaint that, ancillary to the purchase of the list, it has obtained the right to prevent Noah Willens from using the list. In other words, to the same extent that Noah Willens owed prior to the sale a fiduciary duty to Kling and Wilco not to use their list of commissioned sales agents for personal gain, Noah Willens owed (and breached) a fiduciary duty to Kaeser. In Count III, Kaeser asserts that Incentive Network and Noah Willens are successors to, the same as and/or the alter ego of Kling and Wilco and, as such, are bound by, and have breached the terms of, the sales contract.

III. Breach of Fiduciary Duty (Count II)

◼ Noah Willens' argument in support of summary judgment on Count II of Kaeser's complaint is twofold. First, Willens contends that Kaeser lacks standing to assert a breach of fiduciary duty claim on behalf of two corporations that are now dissolved, *i.e.*, Kling and Wilco. In the alternative, Willens asserts that he did not owe a fiduciary duty to either Kling or Wilco at the time of the alleged breach, *i.e.*, in 1992.

Willens' standing argument evinces a miscomprehension of the allegations in Count II of Kaeser's complaint. Kaeser does not assert that Willens breached a duty owed to either Wilco or Kling. Rather, Kaeser argues that Willens owed it a duty incidental to the terms of the sales contract, and that his conduct in sending the solicitation letter to virtually every agent on the list it purchased constitutes a breach of that duty. Indeed, under the unambiguous terms of the contract, Kling, Wilco and Rita Willens purported to transfer for due consideration the exclusive rights to the list of sales agents. As Kaeser poignantly notes, the list is worthless without an incidental property right to preclude unauthorized use of that property. Whether labelled a fiduciary duty or an incidental property right, it is this privilege to exclude others that Kaeser asserts in Count II of its complaint.

◼ The gravamen of Willens' second contention is that whatever the duty he may have owed to Kaeser, such duty terminated with his departure from Wilco and Kling. Viewing Kaeser's claim in terms of protectable property rights, however, reveals Willens' timing argument as hollow. Under Illinois law,[1] an employer is said to have a "protectable business interest" in its clientele (distinct from a trade secret), vis-a-vis a former employee, when the information sought to be protected is kept confidential by the employer and acquired by the former employee only by virtue of his or her employment relationship. *See Williams & Montgomery, Ltd. v. Stellato,* 195 Ill.App.3d 544, 553, 142 Ill.Dec. 359, 365, 552 N.E.2d 1100, 1106 (1st Dist. 1990); *Agrimerica, Inc. v. Mathes,* 170 Ill. App.3d 1025, 1031, 120 Ill.Dec. 765, 769, 524 N.E.2d 947, 951 (1st Dist.1988). In the instant case, Kaeser has set forth evidence indicating that the names of the sales agents it purchased from Wilco, Kling and Rita Willens were confidential (hence the $360,000 paid for such information), and that Noah Willens, learning of this confidential information only by virtue of his employment with Kling and Wilco, used the list for his own benefit. True, Noah Willens was not employed by Kaeser. However, he was an officer of both Kling and Wilco, and knew of the transfer of rights from those companies to Kaeser. Despite this knowledge, Noah Willens utilized the list in apparent violation of Kaeser's exclusive property interest. Under these circumstances, there is sufficient evidence from which a reasonable jury could conclude that Willens' usurped a protected property interest from Kaeser. Accordingly, we deny Willens' motion for summary judgment on Count II of Kaeser's complaint.

IV. Breach of Contract (Count III)

◼ It is undisputed that neither Noah Willens nor Incentive Network was a party to the October 29, 1986 sales contract between Kaeser, Kling, Wilco and Rita Willens. Nonetheless, Kaeser seeks to hold both Noah Willens and Incentive Network directly liable under the contract, contending that defen-

---

1. It is undisputed that Illinois law applies to this diversity action.

dants are successors to, the same as and/or the alter ego of Kling and Wilco.

■ The issue presently confronting the court is one of privity. Privity of contract or estate has been defined as "mutual *or successive* relationship to the same rights of property." *Collins Co. v. Carboline Co.,* 125 Ill.2d 498, 511, 127 Ill.Dec. 5, 10, 532 N.E.2d 834, 839 (1988) (emphasis in original). The relationship may arise by operation of law, by descent, or by voluntary or involuntary transfer. *Id.* (citing *Towle v. Quante,* 246 Ill. 568, 573, 92 N.E. 967 (1910)). As can be inferred from the above quoted definition of privity, courts typically confront the issue of privity within the context of a plaintiff who is not a party to a contract yet seeks to assert the rights embodied therein. Thus, comes the pervasive view that " '[p]roperly understood, privity is only a means of protecting a party guilty of breach against losses suffered by remote parties which are unanticipated and therefore not included in the calculation of costs.' " *Id.* (citing Kessler, *Products liability,* 76 Yale L.J. 887, 892 (1967); Speidel, *Warranty Theory, Economic Loss, and the Privity Requirement: Once More into the Void,* 67 B.U.L.Rev. 9, 24–25 & n. 54 (1987)).

■ Nonetheless, we can envision a situation where the "remote parties" (*i.e.,* those not parties to the contract), rather than suffering losses as a result of a party's breach, cause by their actions unanticipated losses to a party to the contract. Under such circumstances, privity may operate to protect the contracting party in the same manner as the concept is invoked to protect remote parties as described above. To be sure, Illinois courts have long recognized that a valid assignment of contractual obligations conveys privity so that the remaining party to the contract may sue the assignee to enforce the terms of the contract. *See, e.g., Leitch v. New York Central R.R. Co.,* 388 Ill. 236, 242, 58 N.E.2d 16 (1944) (if lessee's assignee assumes the lease obligations, privity of contract exists between the assignee and lessor). Similarly, and more relevant to the instant case, a corporate obligee may not avoid its contractual obligations by continuing its operation under a different corporate name. For example, in *Terminal Freezers, Inc. v.*

*Roberts Frozen Foods, Inc.,* 41 Ill.App.3d 981, 354 N.E.2d 904 (3d Dist.1976), defendant Roberts filed a counterclaim for breach of contract, alleging that the parties had entered into a contract which provided specific rates for storage and freezing services and Terminal Freezers had violated the terms and rates set out in the contract. *Id.* at 982–83, 354 N.E.2d at 906. Terminal Freezers argued that the contract could not be binding upon it as its name did not appear on the contract. Rather, the contract purported to be between Roberts and Service Ice and Cold Storage, Inc. *Id.* at 985, 354 N.E.2d at 907. Finding that Terminal Freezers and Service Ice were the same corporation in all but name, the court held "that Terminal Freezers succeeded to the obligations and benefits of the Service Ice contract with Roberts." *Id.* at 986, 354 N.E.2d at 908.

■ Whether Incentive Network is nothing more than a continuation of Wilco and Kling under a different corporate name is a question of fact to be determined by a jury. It may be, as defendants claim, that Incentive Network is neither the same entity nor a successor to Wilco and Kling. This determination will be made in light of such factors as (1) the timing between the dissolution of the former entities and the incorporation of the later, (2) the overlap of ownership interest, and (3) the overlap of corporate management. Nonetheless, Kaeser's proffer, including the solicitation letter which expressly states that "in 1989, [Noah Willens] reopened the company [*i.e.,* Wilco] under the name of The Incentive Network, Ltd," is sufficient to create a genuine issue of material fact. As such, we deny Incentive Network summary judgment on Count III of Kaeser's complaint.

■ Assuming that Incentive Network may be held liable under the October 29, 1986 sales contract as a successor to Wilco and Kling, Noah Willens maintains that he may not be held responsible for such obligations because, "at all times pertinent to the alleged breach of contract, he was acting solely in his capacity as president of Incentive Network and for its benefit." Indeed, as a general rule, an officer, director or employ-

ee of a corporation acting within his corporate capacity may not be held personally liable for the corporation's debts. *Motsch v. Pine Roofing Co.,* 178 Ill.App.3d 169, 176, 127 Ill.Dec. 383, 388, 533 N.E.2d 1, 6 (1st Dist.1988). This rule, of course, is not without exception. Illinois courts have held that an officer-agent of a corporate principal may be held liable for torts of the corporation in which the officer has personally participated. *Id.* Likewise, Illinois courts will pierce the veil of limited liability where "there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist ... and circumstances [are] such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 569–70 (7th Cir.1985) (citing *Macaluso v. Jenkins,* 95 Ill.App.3d 461, 50 Ill.Dec. 934, 420 N.E.2d 251 (1981)); *see also Sea–Land Servs., Inc. v. Pepper Source,* 941 F.2d 519, 520 (7th Cir.1991) (interpreting Illinois law).

While Count III represents a claim for breach of contract and, absent fraud in the inducement, corporate officers cannot be held personally liable for contractually incurred debts, *see First Nat. Bank of Boston v. Heuer,* 702 F.Supp. 173, 176 (N.D.Ill.1988) (interpreting Illinois law), the instant case *may* warrant piercing Incentive Network's corporate veil to hold Noah Willens personally liable. In determining whether a corporation is so controlled by another to justify disregarding their separate identities, the Illinois courts focus on four factors: "(1) the failure to maintain adequate corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." *Van Dorn,* 753 F.2d at 570. Once unity of interest and ownership is established, the plaintiff must show that circumstances are such that adhering to the corporate fiction would constitute either the sanctioning of a fraud (intentional wrongdoing) or the promotion of injustice (some wrong beyond the inability to collect upon the debt). *Sea–Land Servs.,* 941 F.2d at 522–524. We highlight the term "may" above to indicate the absolute devoid of facts

from which we can assess the unity of interest and ownership between Noah Willens and Incentive Network. True, ordinarily "opponents to summary judgment motions cannot simply rest on their laurels, but must come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 522. Nevertheless, we observe that defendants' motion for summary judgment was filed a mere thirty-six days after Kaeser instituted this action, leaving little, if any, time for Kaeser to engage in discovery on these relevant matters. As such, rather than resolving the issue on the basis of Kaeser's failure to meet its burden of production and possibly working substantial injustice to Kaeser, we will defer ruling on this matter until the record is more fully developed.

### V. Conclusion

For the reasons set forth above, defendant Noah Willens and Incentive Network's motion for summary judgment on Counts II and III of Kaeser's complaint is denied. It is so ordered.