FARM CREDIT BANK OF ST. LOUIS, as successor to the Federal Land Bank of St. Louis, Plaintiff-Appellee, v. FLOYD ISRINGHAUSEN, Defendant-Appellant (Roger D. Isringhausen *et al.*, Defendants).

Fourth District   No. 4—90—0613

Opinion filed March 14, 1991.

Steven N. Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellant.

Law Offices of Gusine & Theivagt, Ltd., of Carrollton (Charles E. Theivagt, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Floyd Isringhausen, appeals an order granting summary judgment against him and in favor of plaintiff, the Farm Credit Bank of St. Louis, as successor to the Federal Land Bank of St. Louis. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) On appeal, defendant claims that genuine issues of material fact exist, requiring that the summary judgment be reversed and remanded. We disagree and affirm.

## I. BACKGROUND

In September 1979, Roger and Linda Isringhausen applied to the Federal Land Bank of St. Louis (which was subsequently succeeded by the Farm Credit Bank of St. Louis) for a loan to purchase 247 acres of farmland in Jersey County, Illinois. The loan application named Floyd and Virginia Isringhausen, Roger's parents, as "other applicants" for the loan. (Virginia Isringhausen died in 1981.) While Floyd agreed to provide 160 acres of his own farmland as additional collateral to secure the loan, the parties dispute whether Floyd provided this additional collateral on his own or whether this additional security was requested by the bank as a condition for approving the loan. The loan application was signed by all four Isringhausens. Both Roger and Floyd provided the bank with financial statements.

The loan application was processed by Steven Schweizer, then president of the Federal Land Bank of Carrollton-Carlinville, and assigned to the Jerseyville office. Schweizer prepared a credit report that listed Roger as the applicant and contained the statement, "Roger is buying 247 acre farm." The credit report included financial data on both Roger and Floyd. A mortgage dated February 13, 1980, was signed by Roger, Linda, Floyd, and Virginia, creating a lien against the property to be purchased (parcel I) and the 160 acres owned by Floyd (parcel II). A note dated February 13, 1980, in the amount of $640,000, secured the mortgage and was also signed by all four Isringhausens.

The memorandum of settlement and photocopies of the checks indicated that the net loan proceeds were distributed to Roger and Kenneth Breitwiser (representing the seller) for the purchase of the 247 acres, with the remaining balance of $1,150 distributed to Roger. The memorandum of settlement also indicated that the bank issued 6,400 shares of stock in the association to "Floyd and Virginia," and "Roger and Virginia [sic Linda]" as tenants in common.

On May 3, 1988, plaintiff filed a complaint for foreclosure of mortgage against the Isringhausens. Floyd's answer, filed on June 29, 1988, admitted the essential allegations of the complaint to foreclose, but specifically denied that Floyd had executed the note as a comaker. On December 27, 1988, Floyd filed an amended first affirmative defense alleging that Schweizer represented to him that his sole liability on the loan would be the 160 acres of parcel II, but not any personal obligation beyond the value of that collateral.

On February 9, 1989, judgment of foreclosure was entered against Roger and Linda, and parcel I was ordered to be sold by public auction. An order confirming the sale and seeking a deficiency judgment against Roger and Linda in the amount of $297,378.42 was filed on May 25, 1989. (That order was amended on June 14, 1989, to include the payment of real estate transfer stamps.)

On February 9, 1990, plaintiff filed a motion for summary judgment which included depositions of Floyd, Roger, and Linda, an affidavit of Schweizer, and copies of the note and mortgage signed by Floyd. The circuit court granted plaintiff's motion for summary judgment against Floyd on July 23, 1990, and stated the following:

> "While there may have been misunderstanding on the part of the Defendants as to the extent of Defendant, Floyd Isringhausen's, liability on the Promissory Note, there is not a scintilla of evidence in the pleadings under consideration to support the allegation of fraud. While this appears to be a case

where none of the parties, including the Plaintiff, may have imagined that this Defendant's liability would ever extend, as a practical matter, beyond the 160 acres pledged as security, the record is devoid of any indication that the Defendants were deceived or defrauded by any representation of Plaintiff. The loan documents speak for themselves and are unambiguous. They clearly evidence an undertaking by Defendant, Floyd Isringhausen, to assume full responsibility on the entire note. The fact that that eventuality seemed improbable at the time does not absolve Defendant of liability thereon in whole or in part."

On August 17, 1990, a deficiency judgment was entered against Floyd in the amount of $330,369.29.

## II. ANALYSIS

■ The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of plaintiff and against defendant.

"Summary judgment is a procedure available only where there is no genuine, triable issue of material fact; if the pleadings, affidavits, depositions or admissions show that such an issue exists, or reasonable persons may disagree upon inferences fairly drawn from uncontroverted facts, the motion must be denied and the resolution of such facts and inferences is to be made by the fact finder at trial, not by the court considering the motion." (*In re Estate of Olenick* (1990), 204 Ill. App. 3d 291, 297, 562 N.E.2d 293, 297.)

Even though a pleading may purport to raise an issue of material fact, if such issue is not further supported by evidentiary facts, summary judgment is appropriate. In determining the genuineness of a fact, the court should ignore personal conclusions, opinions, and self-serving statements and consider only facts admissible under the rules of evidence. *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 718, 506 N.E.2d 1052, 1055.

■ In this case, defendant asserts fraud as his affirmative defense. Fraud encompasses any act, omission, or concealment calculated to deceive, including silence, if accompanied by deceptive conduct or suppression of material facts constituting an act of concealment. (*Rybak v. Provenzale* (1989), 181 Ill. App. 3d 884, 899, 537 N.E.2d 1321, 1331.) While both fraud in the inducement and fraud in the execution are valid defenses to an action on a note (*Melvin State Bank v. Crowe* (1968), 97 Ill. App. 2d 82, 96, 239 N.E.2d

483, 490; see also *Colonial Bank & Trust Co. v. Kozlowski* (1982), 106 Ill. App. 3d 639, 642, 435 N.E.2d 1251, 1253; *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 93-94, 379 N.E.2d 1307, 1316), at oral arguments, defendant's counsel expressly limited his claim to fraud in the inducement.

■■ In its motion for summary judgment, plaintiff relied on the mortgage and note containing Floyd's signature as evidence of Floyd's agreement to be personally obligated for the entire debt. While competent adults are presumed to know the nature of contracts to which they sign their names, this presumption is rebuttable. (*Union National Bank & Trust Co. v. Carlstrom* (1985), 134 Ill. App. 3d 985, 991, 481 N.E.2d 300, 303.) In addition, although the parol evidence rule precludes any evidence of prior understandings when parties put their agreement in writing, this rule does not apply to preclude an allegation of fraud or mutual mistake. See *Dellcar & Co. v. Hicks* (N.D. Ill. 1988), 685 F. Supp. 679 (applying Illinois law); *Shanahan*, 63 Ill. App. 3d at 94-95, 379 N.E.2d at 1316-17.

In his discovery deposition, Floyd admitted that he had signed the note in question, and had signed notes in the past, for loans that he had taken out personally. However, his testimony also indicated that he intended not to enter this transaction as a maker, but only as a limited guarantor or surety for his son, and that he was relying on Schweizer to effectuate that relationship. In his deposition, Floyd stated his understanding of what he agreed to as follows:

"Q. [Defendant's attorney]: When you signed the documents for Federal Land Bank, was it your understanding that you would be liable for the entire debt?

A. No, sir. My only understanding was that, if he couldn't make his payments, I would lose this 160 acres of land. That's all I knew that I was obligated for.

Q. You were relying on Mr. Schweizer for preparing the necessary documents to effect that type of transaction?

A. Yes, sir."

■ To sustain his claim of fraud, Floyd would have had to prove the following elements: (1) a false statement of a material fact; (2) that the party making the statement knew the statement was false or believed it to be untrue; (3) that the party to whom the statement was made had a right to rely on that statement and did, in fact, rely on it; (4) that the statement was made for the purpose of inducing the other party to act; and (5) that reliance by the person to whom the statement was made led to his injury. *Seefeldt*, 154 Ill. App. 3d at 719, 506

N.E.2d at 1055; *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 185-86, 441 N.E.2d 324, 331.

Floyd testified that he had spoken with Schweizer "a few times before there was [*sic*] any papers signed." Floyd described those conversations as follows:

"Q. [Plaintiff's attorney]: [A]re you telling me that Steve Schweizer didn't represent that to you when you made this application, that you would only be liable for 160 acres? * * *

A. I don't think he specified that I would not be liable for other than, anything else. The only thing I was aware of was the 160 acres, and that I was never told that you are going to have to sign a note for any balance or any additional security or anything of this nature.

* * *

Q. [Defendant's attorney]: In your conversation with Mr. Schweizer your sole obligation was to give 160 acres as security for this loan?

A. Yes, sir.

Q. You did not agree to be liable on any, liable for the entire loan?

A. No. I didn't know anything about any, you know. Like I said, I thought the 160, and this is all I had been told, that the 160 would secure this loan.

Q. And Mr. Schweizer told you that the 160 at that point was all he required for you?

A. This is all that he ever mentioned.

* * *

Q. Did Mr. Schweizer indicate to you that the sole collateral or liability that you would have would be the 160 acres?

A. This is the indication that I had. There was never anything said about any additional security.

Q. By additional security, you mean liability on the note?

A. Yes. There was never anything mentioned about any additional security other than the 160 acres of land.

Q. All of this discussion took place prior to the date you signed these documents?

A. Yes. This was all discussed before it got down on paper. And I can't remember specific dates. Again we are going back ten years, and I don't remember specific. I have signed several notes in the mean time [*sic*].

* * *

Q. [Plaintiff's attorney]: Are you telling me that what Steve

Schweizer told you was that he had to have the additional 160 acres as collateral? Was that your understanding with Steve?

A. Yeah. My 160, I was to put up my 160 as additional collateral for Roger's loan. This was the only thing that was discussed."

Floyd argues that the eventual agreement was inconsistent with the representations made to him by Schweizer. The basis of Floyd's fraud claim is that he relied on these statements, purportedly made by Schweizer, to his detriment. In his deposition, Floyd stated the following:

"Q. Had Mr. Schweizer told you at the time that you signed the note that you were obligating yourself for the entire loan and not just putting up the 160 acres as collateral, would you have signed it?

A. No, I wouldn't have signed it and put up 160 acres of land. What would I want to put up the 160 for if I was going to sign the original note?"

Schweizer's affidavit on this point states the following:

"That Affiant did not at any time during this loan transaction, from the time of submission of the loan application to the time of the loan closing, ever communicate to Roger Isringhausen, Linda Isringhausen, Floyd Isringhausen, or Virginia Isringhausen, that Floyd and Virginia Isringhausen would not be fully liable with Roger and Linda Isringhausen on the promissory note, nor, that Floyd and Virginia Isringhausen's liability under the note would be limited to the extent of the 160 acre farm mortgaged by them."

Schweizer also stated in his affidavit that it was his

"custom and practice at such real estate loan closings to review with each of the loan applicants the loan application, promissory note, real estate mortgage, and settlement memorandum, highlighting the provisions of each document to the loan applicants and allowing the loan applicants an opportunity to read each such document in detail, to ask any questions that arose during the course of such document review and to obtain necessary signatures."

Floyd's recollection of the closing was much different; however, he was not precluded from reviewing the documents put before him.

"Q. When you signed those papers, Mr. Isringhausen, did you have an opportunity to examine them before you signed them?

A. Oh, yea, I am sure that we did, the papers were just put out to us and, 'Sign here,' and then turned over some more papers 'Sign here.'

Q. I mean nobody at the Land Bank forced you to sign anything or anything like that, did they, sir?

A. No, sir. None of them had a gun.

\* \* \*

Q. Mr. Isringhausen, you have testified this morning, of course, that you signed this note and this mortgage. When you signed that note as a farmer that has been in business and, as you say, signed more than one note, just based upon your background, what does that mean to you when you sign that note?

A. It means that I didn't understand that this was what I was signing when I signed it.

Q. Well, you have indicated that you read over the documents, read them. Did you relate to Steve Schweizer any objection to signing that note?

A. I don't believe I indicated that I looked over and read these. I believe I told you that they pushed the papers out and said, 'Sign here, sign here, and sign here.' And these were all, as I recall, in order. Just flip this over, sign here; flip this over and sign here.

\* \* \*

Q. Okay, sir. Steve Schweizer didn't prevent you from reading those documents, did he?

A. No, sir.

Q. Nobody else in the Federal Land Bank prevented you from reading them, did they?

A. No, sir.

Q. So you certainly had a chance to examine the documents before you ever signed your name; am I correct?

A. I did not have an attorney with me, if this is what you are saying. I think I told this gentleman one time, all the people I have dealt with before has [sic] been honest. I assumed they were. Apparently I was wrong.

Q. All right, sir.

Did Steve Schweizer ever prevent you from bringing an attorney or having an attorney examine papers?

A. No, sir. I didn't think it was necessary.

Q. So it was your own decision to appear and sign documents without an attorney? It wasn't somebody at the Land

Bank that actually prevented you from doing that; am I correct, Mr. Isringhausen?

A. They did not prevent me from having an attorney there, no. Like I said, I didn't think it was necessary to have an attorney there. I thought Federal Land Bank was an old established business, and I didn't, I was never told, I didn't dream there was anything other than this 160 acres put up as security."

■■ "To establish a *prima facie* case of fraud, one must allege a knowing misstatement of material fact, which is reasonably relied upon by plaintiffs." (*Lenzi v. Morkin* (1983), 116 Ill. App. 3d 1014, 1017, 452 N.E.2d 667, 670; see also *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599, 601.) To constitute fraud, "[t]he concealment may not be a mere passive omission of facts during a business transaction but must have been done with the intent to deceive under circumstances creating an opportunity and duty to speak." (*Allensworth v. Ben Franklin Savings & Loan Association* (1979), 71 Ill. App. 3d 1041, 1044, 389 N.E.2d 684, 687.) Floyd has asserted that he relied on Schweizer to effectuate his (Floyd's) understanding of the transactional relationship. Obviously, there was a misunderstanding; the question is, was Floyd's misunderstanding self-induced or the product of plaintiff's representations?

■ On this record, we cannot find any act of Schweizer or the bank, either overt or covert, that supports Floyd's claim that his misunderstanding was due to plaintiff's representations. While there may have been a misunderstanding on Floyd's part, this misunderstanding is not attributable to the plaintiff.

Accordingly, because we find no genuine issue of material fact to be present, the order granting summary judgment is affirmed.

Affirmed.

LUND, P.J., and GREEN, J., concur.