In re SALEM MILLS, INC., Debtor.

SALEM MILLS, INC., an Illinois
corporation, Adversary
Plaintiff,

v.

WISCONSIN TOOL AND STAMPING
COMPANY, an Illinois corporation, and
Robert Ernst, Adversary Defendants,

WISCONSIN TOOL AND STAMPING
COMPANY, an Illinois corporation, Ad-
versary Third–Party Plaintiff, Counter-
defendant,

v.

SALEM MILLS, INC., Adversary
Counterdefendant,

Raymond Mobile, and R. Townley
Rose, Jr., Adversary Third–
Party Defendants.

Rocco F. PALMI, Adversary Third–
Party Defendant, Adversary
Counterplaintiff,

v.

Robert ERNST, Adversary
Counterdefendant.

No. 91–C–4030.

United States District Court,
N.D. Illinois,
Eastern Division.

March 16, 1995.

Ronald M. Brown, Brown & Shinitzky, Chartered, Chicago, IL, for plaintiff.

Barry Alan Miller, Miller, Shakman, Hamilton, Kurtzon & Shlifke, Chicago, IL, for Wisconsin Tool & Stamping Co., Inc., Robert Ernst.

David A. Axelrod, Schoenberg, Fisher & Newman, Ltd., Chicago, IL, for Raymond A. Mobile.

David A. Axelrod, Schoenberg, Fisher & Newman, Ltd., David Michael Jankura, Ariel Weissberg, Charles A. Linn, Weissberg and Associates, Ltd., Chicago, IL, for R. Townley Rose, Jr.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Wisconsin Tool and Stamping Company ("Wisconsin Tool") has filed a Motion for Summary Judgment ("Motion") on Counts IV, XIII, XIV and XX of its Adversary Counterclaim and Third Party Complaint ("Counterclaim") against Raymond A. Mobile ("Mobile") and R. Townley Rose, Jr. ("Rose"). Liability for the claims alleged, rather than damages, is the only issue raised by Wisconsin Tool. In addition, Wisconsin Tool and Robert Ernst ("Ernst"), an adversary counterdefendant, have filed Motions for Summary Judgment against Rocco Palmi ("Palmi") on Count I of Palmi's Amended Adversary Counterclaim ("Palmi's Counterclaim"). A trial date has been set for April 10, 1995. After review of the Motions, the Court finds that judgment on the issue of liability must be entered in favor Wisconsin Tool and against Rose and Mobile, because there are no issues of disputed fact on Counts IV, XIII, and XX of Wisconsin Tool's Counterclaim. Disputed issues of fact exist with respect to the agency issue alleged in XIV and summary judgment must therefore be denied. Wisconsin Tool's and Robert Ernst's Motions for Summary Judgment are also granted in favor of Wisconsin Tool and Ernst and against Palmi on Count I of Palmi's Counterclaim, as a matter of law.

1. The undisputed facts summarized in this opinion are those facts that appear "without substantial controversy" pursuant to Fed.R.Civ.P. 56(d). Upon the trial of the action these facts will be deemed established and should not be relitigated.

## BACKGROUND

The following facts are drawn from the parties' Joint Status Report and Wisconsin Tool's Statement of Material Facts as to which there is no genuine issue filed pursuant to United States District Court for the Northern District of Illinois Local Rule 12(M).[1] Wisconsin Tool is a 50 year old company in the metal stamping business. Wisconsin Tool purchases raw or processed metal from factories and warehouses and stamps and forms that metal so that it can be used by manufacturers and other companies. Robert Ernst is the President of Wisconsin Tool. Rocco Palmi is a former officer of Wisconsin Tool. Salem Mills is a former supplier of Wisconsin Tool. Rose and Mobile were the owners and principal officers of Salem Mills, a closely-held corporation, before its bankruptcy.

During the summer of 1988, Rose and Mobile initiated discussions with Robert Ernst, the President of Wisconsin Tool, to negotiate a contract for the purchase of metals.[2] The negotiations were successful and Wisconsin Tool began purchasing metals from Salem Mills. During 1989, Rose and Mobile began making payments to Palmi, which were not disclosed to Wisconsin Tool. In January 1990, Ernst met with Mobile and Rose, at their request. During this conversation, Rose and Mobile admitted that they were making payments to Palmi, initially paying Palmi $2,400.00 per month and later increasing the payments to $3,400.00, when demanded by Palmi. In addition, Rose and Mobile gave Palmi a turbocharger and other personal items. These payments and gifts totalled $36,564.27.

On February 22, 1990, Lawrence Goldsmith, the attorney and accountant for Salem Mills, issued a letter to Palmi, stating that Salem Mills had provided payments and gifts to Palmi, because they wished to retain Salem's business relationship with Wisconsin

2. There is a dispute about whether Rocco Palmi introduced Rose to Ernst, or whether Rose had a long business relationship with Ernst prior to the negotiations. (12(M) ¶ 12; 12(N) ¶ 12). Whatever the case, the negotiations were successful and Wisconsin Tool began purchasing metals from Salem Mills.

Tool.[3] (Ex. J). The letter also indicated that Salem intended to report the total amount of payments and gifts to the IRS on a 1099 form. The 1099 form is included in the record and confirms that payments were made in the amount of $36,564.27 (Ex. K). In late February 1990, a copy of the February 22, 1990, Goldsmith letter ("Goldsmith letter") was given to Robert Ernst. After receiving this letter, Palmi's employment relationship with Wisconsin Tool was terminated.[4] On March 7, 1990, Goldsmith issued a second letter to Wisconsin Tool's attorney, listing a breakdown of the compensation paid to Palmi in 1989. (Ex. L).

Wisconsin Tool claims that Rose and Mobile caused Salem Mills to bribe Palmi to obtain and maintain Wisconsin Tool's business, and that Rose and Mobile engaged in other fraudulent conduct.[5] Rose and Mobile admit that some payments were made to Palmi, but claim that their motivation for making these payments was lawful. Rose claims that these payments were sales commissions for sales leads. (12(N) ¶ 15). Mobile has admitted, under oath, that the payments were made to Palmi to avoid "our getting kicked out of Wisconsin Tool." (12(M) ¶¶ 13, 16). Palmi denies that he accepted bribes. (Palmi 12(N) ¶ 2). Wisconsin Tool terminated its relationship with Salem Mills on August 30, 1990.[6]

This case was originally filed by Salem Mills, Inc., in the Circuit Court of Cook County against Wisconsin Tool and Stamping Company ("Wisconsin Tool"). Following the bankruptcy of Salem Mills, the case was removed and assigned to the Bankruptcy Court. This case was then consolidated in the Bankruptcy Court with two other adversary proceedings that were referred from the District Court to the Bankruptcy Court. Those two adversary proceedings have now settled. On June 27, 1991, third-party defendants Rose and Mobile filed a Petition to Withdraw the Reference. On July 19, 1991, Judge Hart granted the Petition to Withdraw the Reference for a trial on the merits. Judge Hart then remanded the matter to the Bankruptcy Court for consolidation with related bankruptcy adversary proceedings, ruling upon all interlocutory orders, and the supervision of a final pretrial order.

All claims between Salem Mills and Wisconsin Tool were subsequently settled in a settlement approved by Judge Sonderby, the Bankruptcy Judge. Accordingly, the only claims remaining in the matter are: (1) a claim by Wisconsin Tool against Palmi, Rose, and Mobile under the RICO statute, with additional counts ("Adversary Counterclaim"); (2) a Counterclaim by Mobile against Wisconsin Tool, and (3) an Amended Adversary Counterclaim by Palmi against Wisconsin Tool and Robert Ernst. Motions for Summary Judgment have been filed by Wisconsin Tool on Counts IV, XIII, XIV and XX of its Adversary Counterclaim against Rose and Mobile, and by Wisconsin Tool and Robert Ernst on Count I of Palmi's Counterclaim. A trial date has been set for April 10, 1995.[7]

---

3. The parties do not dispute that Rose and Mobile supplied the information regarding the amount of the payments and the kinds of gifts to Palmi. Rose asserts, however, that the "language of the Goldsmith letter implying that the payments were improper[,]" and "the language suggesting an improper intent to influence Wisconsin Tool was in fact supplied by Ernst himself." (12(N) ¶ 17).

4. The parties do not dispute that Wisconsin Tool's company policy prohibited the acceptance of gifts worth more than nominal consideration from any supplier or customer. (12(M) ¶ 19). The parties also do not dispute that Palmi knew of the policy prohibiting the acceptance of presents from a supplier. (12(M) ¶ 20).

5. The Civil Rico claims alleged by Wisconsin Tool in its Counterclaim are not at issue in this Motion.

6. Wisconsin Tool asserts that the delay between discovery of the payments and termination of Salem Mills occurred because Wisconsin Tool needed to obtain "an alternate method of purchasing metal." (12(M) ¶ 22).

7. Defendant Mobile filed a Motion to Extend the briefing schedule today. The Court denied this Motion because it represents the third request for an extension of time to respond to Wisconsin Tool's Motion for Summary Judgment. On January 17, 1995, the Court extended the time for filing a response from February 7, 1995 to February 10, 1995. On February 23, 1995, the Court extended the time for filing a response from February 10, 1995 to March 10, 1995. Today, six days *after* the March 10, 1995, filing deadline, Mobile requests an additional fourteen (14) days to file a response, bringing the parties and this Court to March 31, 1995, eleven days

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Id.* at 248, 106 S.Ct. at 2510.

"The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are irrelevant or unnecessary are not material. *Id.*

"Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As stated in *Anderson*, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249, 106 S.Ct. at 2511. "When a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250, 106 S.Ct. at 2511. "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2518. If the evidence is merely colorable, or is not significantly probative, or is no more than a scintilla, summary judgment may be granted. *Id.* at 249–250, 106 S.Ct. at 2510–2511.

### I. Wisconsin Tool's Motion For Summary Judgment

The undisputed facts essential to the resolution of Wisconsin Tool's Motion against Rose and Mobile are as follows: (1) Rose and Mobile gave Palmi cash, a turbocharger and other personal items worth $36,564.27 (12(M) ¶ 13–16; Ex. J–K); (2) Mobile admits that he and Rose made payments to Palmi in order to maintain a business relationship with Wisconsin Tool (12(M) ¶ 14); and (3) Rose and Mobile failed to disclose to Wisconsin Tool the payments made to Palmi until questioned by Ernst in 1990. (12(M) ¶ 14).

The parties assert that the following facts are in dispute: (1) whether Rose made payments to Palmi for the purpose of maintaining a business relationship with Wisconsin Tool (as admitted by Mobile, his partner), or as sales commissions for sales leads (12(N) ¶¶ 15, 37); (2) whether the incriminating language in the Goldsmith letter can be used to attribute unlawful intent (regarding the Palmi payments) to Rose (12(N) ¶ 17); (3) whether Wisconsin Tool relied on Palmi's support and affirmative promotion of Salem Mills during the contract, even though employees of Wisconsin Tool were critical of Salem Mills. (12(N) ¶ 24; Aff. of Ernst, Ex. A, ¶ 7; Aff. of Richard Simonds, Ex. B, ¶ 5); and (4) whether Wisconsin Tool incurred damages as the result of the payments made to Palmi. (12(N) ¶ 28–29).[8] However, the

---

before trial. In view of the pendency of the upcoming trial date, this Court has decided to rule on the pending motions without the benefit of defendant Mobile's response. *See* Local Rule 12(P). Nonetheless, the material facts with respect to Mobile's joint participation with Rose in the activities alleged as the basis for liability in Counts IV, XIII, and XX, are not in dispute (and the Court does not believe Mobile could bring forth evidence which would change this result).

8. The material facts with respect to Wisconsin Tool's Motion for Summary Judgment against Rose and Mobile are in dispute only on the issue of damages. In its Motion, Wisconsin Tool asks for summary judgment against Defendants as to

appearance of a dispute about the material facts in this case is illusory. After careful review of the facts, the Court finds that judgment must be entered against Rose and Mobile, as a matter of law.

### A. Common Law Fraud

■ In Illinois, an action for fraud requires the plaintiff to prove that: (1) the defendant made false statements of material fact, and not of opinion; (2) knowing that they were false; (3) intending that the plaintiff rely on them; (4) that plaintiff did rely; (5) that this reliance was justified; and (6) that the plaintiff was damaged thereby. *West v. Western Casualty & Surety Co.,* 846 F.2d 387, 393 (7th Cir.1988) (citations omitted). In addition, "[f]raud encompasses any act, omission, or concealment calculated to deceive, including silence, if accompanied by deceptive conduct or suppression of material facts constituting an act of concealment." *Farm Credit Bank v. Isringhausen,* 210 Ill. App.3d 724, 727, 155 Ill.Dec. 235, 237, 569 N.E.2d 235, 237 (4th Dist.1991). *See also Old Security Life Ins. Co. v. Continental Illinois Nat'l Bank and Trust Co.,* 740 F.2d 1384, 1396 (7th Cir.1984) (failing to disclose that payments are made to an employee to obtain or maintain a business relationship with the employer operates as fraud upon the employer); *United States v. Lovett,* 811 F.2d 979, 985–86 (7th Cir.1987) (same); *United States v. George,* 477 F.2d 508, 514–15 (7th Cir.1973) (same).

■ Wisconsin Tool has satisfied the remaining elements of common law fraud on the issue of liability. Rose and Mobile's failure to disclose the fact that they had agreed to make and in fact made payments to Palmi constitutes a false statement of material fact. Silence, accompanied by an act of concealment or the suppression of material facts, constitutes a false statement. *Isringhausen,* 210 Ill.App.3d at 727, 155 Ill.Dec. 235, 569 N.E.2d 235. Moreover, Rose and Mobile do not dispute that they made undisclosed payments to Palmi. Given these facts, there can be no dispute that Rose and Mobile knew that their failure to disclose these payments constituted "an act of concealment."[9] *Id.* The undisputed facts also support Wisconsin Tool's claim that it justifiably relied on Palmi's support and defense of Salem Mills (during its business relationship with Salem) to its financial detriment. Although Wisconsin Tool claims that Salem Mills initially made payments to Palmi in order to obtain a business relationship with Wisconsin Tool, Rose denies that illegal payments were made to Palmi prior to the time that Wisconsin Tool entered into its business relationship with Salem Mills. (12(N) ¶ 25). Therefore, Wisconsin Tool's assertion that it relied on Palmi's recommendations to enter into a business relationship with Salem Mills is disputed. (12(M) ¶ 15). Nonetheless, it is not critical for Wisconsin Tool to prove that Palmi convinced the company to enter into a business relationship with Salem Mills. (12(N) ¶¶ 24–25). Robert Ernst's and Richard Simonds' uncontroverted affidavits regarding Palmi's defense of Salem Mills against criticism by Wisconsin Tool employees, in addition to Palmi's affirmative promotion of Salem Mills, (Ex. B, ¶ 5), is sufficient to establish reliance for purposes of this Motion.[10] This reliance was justified because

liability only. If Wisconsin Tool prevails on this Motion, the exact amount of its damages will be established at the trial on the remainder of this matter. Thus, factual issues concerning damages will not defeat Wisconsin Tool's Motion.

9. Although it can be reasonably inferred that Rose and Mobile knew that they failed to disclose the fact of these payments to Wisconsin Tool, the Court cannot infer that Rose and Mobile knew that silence, as an act of concealment or suppression of material facts, constituted fraud, as a matter of law. However, the knowledge element does not require subjective knowledge of illegality; it requires only subjective knowledge that the statement made was false. The falsity of the

"statement" in this case is the silence and suppression of the fact that payments were made. Rose and Mobile knew that these payments should have been reported to Wisconsin Tool; they therefore must have known that their silence was a form of falsity. The fact that Rose and Mobile ultimately admitted to the payments and reported these monies to the Internal Revenue Service supports this conclusion.

10. Palmi's affidavit, paragraphs 4–8, merely contend that he did not initiate the business relationship between Salem Mills and Wisconsin Tool. That fact is not material. Paragraph 10 of the affidavit states that Palmi was directed by Ernst to defend Salem Mills to other employees at

Palmi was then the Executive Vice President of Wisconsin Tool.

With respect to the element of intent, the following undisputed facts are material. Wisconsin Tool claims that the Goldsmith letter and the sworn testimony of Mobile at the § 341 creditors' meeting,[11] is conclusive proof that the payments made to Palmi were made with the intent to induce Wisconsin Tool, vis-a-vis Palmi, to maintain its business relationship with Salem Mills. Wisconsin Tool argues that the statements made in the Goldsmith letter, written by Goldsmith in his capacity as an authorized agent of Salem Mills and its principals, may be attributed to Mobile and Rose. In this letter Goldsmith stated:

> Salem Mills, Inc. has been uncomfortable over the last year paying cash commissions, purchasing luxury items and vacations for both you and your family. The Executive Vice President position that you hold and its related power has compelled Salem to compromise business ethics to retain Salem's business relationship with Wisconsin Tool.... Salem regrets that it submitted to the powers of your office and will proceed in the future in a prudent and ethical manner.

(Exhibit J). Wisconsin Tool then notes that an "attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds." *United States v. 7108 West Grand Ave.*, 15 F.3d 632, 634 (7th Cir. 1994). Similarly, Mobile testified, under oath, that he and Rose made payments to Palmi to avoid "our getting kicked out of Wisconsin Tool." (Ex. M at 34). Mobile also indicated that the payments could be characterized as a means of "helping us stay [at Wisconsin Tool]." (Ex. M at 35).

In opposition, Rose claims that the Goldsmith letter cannot be attributed to him, because the incriminating language in the letter was supplied by Ernst, not authorized or supplied by Rose and Mobile. (12(N) ¶ 17). Rose also claims that the payments to Palmi were made, not for the unlawful purpose of obtaining or maintaining a business relationship, but as legitimate sales commissions for sales leads. (12(N) ¶ 15). Goldsmith has also testified that the Palmi payments were made for the purpose of sales commissions. (12(N) ¶ 37).

■ There is no question that Goldsmith's written statements could be construed as an admission by the principals, Rose *and* Mobile, by their agent, Goldsmith. The Seventh Circuit, in *United States v. 7108 West Grand Ave.*, held that an agent is bound by his chosen agent's deeds. 15 F.3d at 634. In *7108 West Grand*, the plaintiff's attorney, Habib, did not file a timely claim and the government filed a motion for default. Habib and his client did not appear at the hearing on the motion, which the district court granted. Habib then filed an appeal, but did not file it in a timely manner. The plaintiffs then hired new counsel and appealed seeking relief from the judgment under Fed.R.Civ.P. 60(b), claiming that their attorney was grossly negligent. The Seventh Circuit held that an attorney's errors and misconduct are attributed to his clients, even if the conduct is intentional or negligent.

In this case, the Court does not believe that an attorney would make an admission against his clients' interests, in a letter which was intended to further his clients' interests, without his clients' authorization. Mobile has already admitted that he made payments to Palmi for the purpose of maintaining a business relationship with Wisconsin Tool. De-

---

Wisconsin Tool. This statement does not controvert the material fact that Palmi defended and affirmatively promoted Salem Mills to Wisconsin Tool, as a corporation. The corporation was therefore entitled to rely on Palmi. Similarly, Rose's affidavit relates only to the initiation of the business relationship with Wisconsin Tool and is, therefore, not material to the determination that Wisconsin Tool relied on Palmi to *maintain* its business relationship with Salem Mills once this relationship was formed.

11. Rose argues that Mobile's admission cannot be admitted against him at trial on the issue of liability under *Federal Rule of Evidence* 801(d)(2)(e), the co-conspirator statement exception to the hearsay rule. Although the Court agrees that Mobile's statement does not fall within Rule 801(d)(2)(e), because it is not a statement made during the course of or in furtherance of a conspiracy, as shown above, other evidence in the record supports the Court's conclusion that Rose paid Palmi to maintain Salem Mills' business relationship with Wisconsin Tool.

spite the fact that Rose has denied that he made payments with this intent, he is liable, because the Goldsmith letter constitutes a constructive admission against interest which can be imputed to him, and is sufficient evidence of knowledge to meet the intent requirement.

■ Goldsmith's sworn testimony, after-the-fact, that Rose told him that the payments were "sales commissions," [12] does not obviate the legal effect of the prior admission. Lastly, Rose's claim that he did not direct Goldsmith to include the incriminating language (i.e., the language regarding Rose's motivation), but merely provided the information regarding the fact of the payments and the amounts of those payments, is "self-serving" without any other factual support in the record.

Generally, "[s]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054 (7th Cir.1994) (citing *McDonnell v. Cournia*, 990 F.2d 963, 969 (7th Cir.1993). This principle holds true even when the self-serving assertion is not contradicted by other testimony made by the declarant. *See Darnell v. Target Stores*, 16 F.3d 174, 177 (7th Cir.1994) (citing *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993) and *Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1105 (7th Cir.1985), for the proposition that "[p]arties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions."). These general statements leave unanswered the question which arises in every case, namely, what facts are sufficient to support an assertion made in a deposition? The answer to this question must be addressed on a case-by-case basis at the summary judgment stage. In this case, the undisputed facts are as follows. Rose and Mobile concealed the fact that they made payments to Palmi; they knew Palmi concealed this fact; Wisconsin Tool relied on Palmi's support and defense of Wisconsin

Tool while Palmi was receiving payments; and Rose and Mobile made the payments for the purpose of inducing Wisconsin Tool to maintain its business relationship with Salem Mills, vis-a-vis Palmi. Given these facts, the Court finds that Rose's self-serving assertion is not supported by any evidence in the record other than the inconsistent statements by Goldsmith. Therefore, Rose's affidavit is insufficient to create a genuine issue of material fact, and summary judgment on the issue of common law fraud liability must be entered against Rose and Mobile.

### B. Count XIII: Breach of Fiduciary Duty

■ Under Illinois law, a third party who knowingly participates in or induces a breach of duty by an agent is liable to the person to whom the duty was owed. *Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill.App.3d 151, 161, 98 Ill.Dec. 663, 668, 494 N.E.2d 785, 790 (1st Dist.1986); *Chicago Park District v. Kenroy, Inc.*, 78 Ill.2d 555, 37 Ill.Dec. 291, 402 N.E.2d 181 (1980); *A.T. Kearney, Inc. v. INCA International*, 132 Ill.App.3d 655, 87 Ill.Dec. 798, 477 N.E.2d 1326 (1st Dist.1985); *Village of Wheeling v. Stavros*, 89 Ill.App.3d 450, 44 Ill.Dec. 701, 411 N.E.2d 1067 (1st Dist.1980). The third party must also obtain a benefit from the breach. *Corroon*, 145 Ill.App.3d at 161, 98 Ill.Dec. at 668, 494 N.E.2d at 790.

■ In this case, Palmi acted as Wisconsin Tool's agent. Rose and Mobile acted as third parties. When Palmi accepted payments from Rose and Mobile without disclosing this fact to Wisconsin Tool, he breached his fiduciary duty of honesty and loyalty to Wisconsin Tool. *See United States v. Lovett*, 811 F.2d 979, 985 (7th Cir.1987) (employee's acceptance of a "kickback" or other bribe constitutes fraud against the employer); *United States v. George*, 477 F.2d 508, 513 (7th Cir. 1973) (fraud consists of employee "holding himself out to be a loyal employee, acting in [the employer's] best interests, but actually

---

12. Moreover, Goldsmith's hedging testimony is inconsistent with his prior statements in the Goldsmith letter. Goldsmith's testimony that Rose characterized the payments as "sales commissions," may have been Rose's way of saying that Palmi was paid to maintain Salem Mills' sales with Wisconsin Tool. This interpretation is consistent with Goldsmith's admissions in the Goldsmith letter.

not giving his honest and faithful services, to [the employer's] real detriment."). A fiduciary duty was breached because Wisconsin Tool's company policy prohibited its employees from accepting presents from a supplier, and Palmi knew of this policy. Mobile is liable because his admission indicates that he knowingly induced this breach for the purpose of maintaining a business relationship with Wisconsin Tool. Rose is liable because the Goldsmith letter constitutes a constructive admission against interest which can be imputed to him, and is sufficient evidence of knowledge to meet the intent requirement for inducement of a breach of fiduciary duty. Finally, the "benefit" Rose and Mobile obtained from the inducement of the breach was their ultimate retention of a business relationship with Wisconsin Tool. Summary judgment must therefore be entered against Rose and Mobile as a matter of law, since there is no genuine issue of material fact as to liability on Count XIII.

### C. *Count XIV: Subagency Theory*

The subagency theory simply realigns the players in this case, substituting Salem Mills for Palmi, as Wisconsin Tool's agent, and labeling Rose and Mobile as subagents of Salem Mills, the corporate agent. On March 10, 1993, Judge Sonderby noted that if Salem Mills were held to be an agent of Wisconsin Tool, then defendants were also subagents of Wisconsin tool. *In re Salem Mills, Inc.*, No. 91 A 74 (Bankr.N.D.Ill. March 10, 1993) at p. 27, citing, Restatement (Second) of Agency § 5 cmt. c, at p. 24 (1958). Salem Mills has claimed that it acted as the agent for Wisconsin Tool in purchasing metals. Wisconsin Tool has denied that Salem Mills was its agent or that any agency relationship was created. (WTS Answer at ¶ 5 filed with Counterclaim). Wisconsin Tool argues, however, that if Salem Mills is an agent of Wisconsin Tool, then it should be liable for breach of a fiduciary duty to Wisconsin Tool. Count XIV alleges this claim in the alternative, arguing that "[t]he same documented evidence that demonstrates Wisconsin Tool's claim for Tortious Inducement of Breach of Fiduciary Duty" by Palmi "also conclusively establishes that Wisconsin Tool is entitled to

summary judgment on Count XIV of its Counterclaim." The Court disagrees.

An agent is "subject to tort liability to the principal for failing to perform his duties." Restatement (Second) of Agency Introduction to Chapter 13, at 171; *see* Restatement (Second) of Agency § 376 cmt. a. One of the duties an agent has is the duty of loyalty to the principal. *See State Security Ins. Co. v. Frank B. Hall & Co.*, 258 Ill. App.3d 588, 595, 196 Ill.Dec. 775, 781, 630 N.E.2d 940, 946 (1st Dist.1994) ("once an agency relationship is found, a fiduciary relationship arises as a matter of law"). A subagent will also be liable in tort if he violates his duty of loyalty to the principal. Restatement (Second) of Agency § 428 cmt. b. Rose and Mobile, as the principals of Salem Mills may be subagents. As subagents, Rose and Mobile would owe this same duty of loyalty (or fiduciary duty) to Wisconsin Tool. *See Roscoe Company v. Lewis University*, 79 Ill.App.3d 1098, 35 Ill.Dec. 133, 135–136, 398 N.E.2d 1083, 1085–1086 (1st Dist.1979) (finding that employee of exclusive managing agent was a duly-appointed sub-agent, with authority to execute contracts binding the principal).

Salem Mills was arguably a purchasing agent of Wisconsin Tool, authorized to procure metals for Wisconsin Tool, rather than a broker. Assuming that Rose and Mobile were subagents with a fiduciary duty, Rose and Mobile breached their duty of loyalty and full disclosure by making undisclosed payments to Palmi. *A.T. Kearney, Inc. v. INCA International*, 132 Ill.App.3d 655, 660–61, 87 Ill.Dec. 798, 804, 477 N.E.2d 1326, 1332 (1st Dist.1985) (company hired to supervise relocation of plaintiff's office, breached its fiduciary duty when it presented only one construction bid to plaintiff from a company in which the agent had an interest): *Beaton & Assoc. v. Joslyn Mfg. & Supply Co.*, 159 Ill.App.3d 834, 111 Ill.Dec. 649, 512 N.E.2d 1286 (1st Dist.1987) (independent consultant breached fiduciary duty to his principal by accepting a secret referral fee from another consultant he recommended to his principal). However, determination of whether Salem Mills, and thus Rose and Mobile, were agents and subagents, (respec-

tively) of Wisconsin Tool, is a question of fact. *Frank B. Hall & Co.*, 258 Ill.App.3d at 595, 196 Ill.Dec. 775, 630 N.E.2d 940 (finding evidence at trial insufficient to establish that defendants were agents, with fiduciary duties, rather than brokers or that a fiduciary relationship arose through the existence of special circumstances); *Blocklinger v. Schlegel*, 58 Ill.App.3d 324, 15 Ill.Dec. 883, 885, 374 N.E.2d 491, 493 (3rd Dist.1978) (multiple listing agreement did not create fiduciary relationship between realtor and seller); *Lageschulte v. Steinbrecher*, 36 Ill.App.3d 909, 344 N.E.2d 750, 755 (1st Dist.1976) (Hayes, J., concurring). In addition, determination of whether a defendant is an agent is based on conduct rather than a job title. *Frank B. Hall & Co.*, 258 Ill.App.3d at 595, 196 Ill.Dec. 775, 630 N.E.2d 940. The parties have failed to provide the Court with the undisputed facts necessary to make this determination. Rather, the parties (taking alternative postures in order to avoid summary judgment on this issue) merely argue the law. The Court cannot grant Wisconsin Tool's Motion without an undisputed factual basis from which to conclude that Salem Mills was, in fact, an agent of Wisconsin Tool. Salem Mills' argument that it acted as an agent is not a sufficient factual basis. Therefore, summary judgment must be denied on Count XIV.

### D. Count XX: Illinois Consumer Fraud Act

Wisconsin Tool has alleged that the fraudulent acts of Rose and Mobile violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"). 815 ILCS 505/1 *et seq.* The Consumer Fraud Act prohibits:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others

rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce....

815 ILCS 505/2.

Wisconsin Tool correctly argues that a Consumer Fraud Act claim is subsumed by a common law fraud claim provided the fraud occurred in the course of conduct involving trade or commerce. *Siegel v. Levy Org'n Dev.*, 153 Ill.2d 534, 180 Ill.Dec. 300, 304, 607 N.E.2d 194, 198 (1992) (Illinois Supreme Court stated that if summary judgment were granted on a common law fraud claim then judgment should have also been entered on Consumer Fraud Act claim provided the deceptive act occurred in the course of conduct involving trade or commerce). The Court has concluded that Wisconsin Tool is entitled to summary judgment on its common law fraud claim in Count IV of the Counterclaim. Therefore, Wisconsin Tool is also entitled to judgment on the Illinois Consumer Fraud Act claim under the auspices of *Siegel.*

### II. Robert Ernst's Motion For Summary Judgment [13]

Robert Ernst ("Ernst"), a counterdefendant in this case and the President of Wisconsin Tool, has filed a Motion for Summary Judgment on Count I of the Amended Adversary Counterclaim of Rocco Palmi, the former Executive Vice President of Wisconsin Tool. In Count I, Palmi asserts that Ernst and Wisconsin Tool defamed him by publishing or causing the publication of the Goldsmith letter and the statements contained in that letter to Wisconsin Tool employees and co-workers. Palmi then alleges that he incurred damage due to the alleged publication by Ernst and Wisconsin Tool.

To establish a claim for defamation, the plaintiff must allege sufficient facts to show that the defendant "made a false statement concerning him, that there was an unprivileged publication to a third party with

---

**13.** Wisconsin Tool has also filed a Motion for Summary Judgment on Count I of the Amended Adversary Counterclaim of Rocco Palmi, but has adopted the motion and supporting papers filed by Robert Ernst, rather than submit its own memorandum of law and 12(M) statement. For the reasons given with respect to Ernst's Motion, the Court grants judgment in favor of Wisconsin Tool and against Palmi on Count I.

fault by the defendant, which caused damage to the plaintiff." *Krasinski v. United Parcel Service, Inc.,* 124 Ill.2d 483, 125 Ill.Dec. 310, 313, 530 N.E.2d 468, 471 (1988). To prove publication the plaintiff must show that, "the defamatory statements were communicated to some person other than plaintiff." *Pandya v. Hoerchler,* 256 Ill.App.3d 669, 195 Ill. Dec. 576, 579, 628 N.E.2d 1040, 1043 (1st Dist.1993).

Wisconsin Tool argues that the undisputed facts prevent Palmi from establishing a defamation claim. First, in his deposition Palmi could not identify any person to whom Ernst made a disparaging or false statement about Palmi. (12(M) ¶ 4). Second, Palmi cannot identify any statement made about him by Robert Ernst, Richard Simonds, or any other officer of Wisconsin Tool or any other employee of Wisconsin Tool. (12(N) ¶ 5). The elements of damage are disputed by Palmi, but the only "damage" Palmi alleges is the termination of his employment with Wisconsin Tool, once Salem Mills provided Ernst with the 1099 tax form reporting payments made to Palmi during the course of Palmi's employment. Damage is only an issue, however, if Palmi can prove the other elements of the defamation claim. For the reasons which follow, the Court finds that Palmi has failed to meet his burden on summary judgment by coming forward with admissible evidence which would enable a reasonable jury to find in his favor on the elements of falsity and publication.

### A. *Falsity*

Palmi claims that Ernst participated in causing the tax form and cover letter to be issued, and is liable for the defamatory contents of those documents and the damage caused by their publication.[14] Goldsmith testified in his deposition that Ernst initiated a telephone call to Goldsmith, stating that Rose and Mobile had met with Ernst and asked him whether he had prepared any letters to Mr. Palmi regarding the payments or the 1099 tax form. Goldsmith then testified that he told Ernst that he was drafting "some-

thing." According to Goldsmith, Ernst then asked Goldsmith for a copy, Goldsmith refused, and Ernst indicated that he would obtain a copy from Salem Mills directly. (Goldsmith Dep. at 640–41). Goldsmith also testified that he believed that Salem Mills had a conversation with Ernst regarding the draft of the cover letter and that changes were made to Goldsmith's draft. (Goldsmith Dep. at 641).

■■■ The tax form and cover letter claiming payments were made by Salem Mills to Rocco Palmi impute the commission of crime and are libelous *per se. Fried v. Jacobson,* 99 Ill.2d 24, 75 Ill.Dec. 398, 457 N.E.2d 392 (1983); *Weber v. Village of Hanover Park,* 768 F.Supp. 630 (N.D.Ill.1991). Palmi then notes that "[t]he very words of the cover letter, 'compromise business ethics,' recognize that integrity in performing the duties of employment is at issue." (Ex. J). Words imputing unfitness for or misconduct or criminal acts in office or employment are also defamatory *per se. Fried,* 99 Ill.2d at 28, 75 Ill.Dec. 398, 457 N.E.2d 392. If Ernst was responsible for the content of these statements, if these statements were published to others and if those statements are false, then Ernst may be liable for defamation. However, Palmi offers no evidence, except his own self-serving denial that he received payments from Rose and Mobile, to support the element of falsity in his defamation claim.

### B. *Publication*

■■■ Palmi also claims that the tax form and cover letter were published by Ernst "to enough key people at Wisconsin Tool to result in Palmi being fired." It is true that communication to employees that another employee was dismissed for reasons related to integrity or criminal activity is sufficient to meet the requirements of publication. *Jones v. Britt Airways, Inc.,* 622 F.Supp. 389, 391–92 (N.D.Ill.1985). Palmi then notes that although the 1099 form was directed to the IRS and the cover letter was directed to Palmi, Ernst received copies of these forms. Palmi has not sued Goldsmith

---

14. Palmi claims that Ernst is aware that the documents are false and has admitted this fact to Palmi and Palmi's wife on more than one occa-

sion. Palmi does not offer any evidence to support this assertion, except his own affidavit. (Palmi Aff. ¶ 12).

for publishing information to Ernst. Rather, Palmi claims that Ernst is liable for defamation, because he was responsible for publishing these documents to other Wisconsin Tool employees. Palmi has not offered any evidence to support this claim, except his own affidavit. (Palmi Aff. ¶ 13). The allegations in Palmi's affidavit are conclusory and self-serving, without a factual basis in the record to support Palmi's claims.[15] For these reasons, the Court grants Ernst's Motion for Summary Judgment on Count I of Palmi's Adversary Counterclaim.[16]

## CONCLUSION

For the reasons given above, Wisconsin Tool's Motion for Summary Judgment on Counts IV, XIII, and XX is granted (# 43–1). Wisconsin Tool's Motion for Summary Judgment is denied on Count XIV, because the issue of agency is a question for the trier of fact. The Clerk of the Court is therefore directed to enter judgment in favor of Wisconsin Tool on Counts IV, XIV, and XX and against Rose and Mobile. In addition, Wisconsin Tool's Motion for Summary Judgment (# 42–1) and Robert Ernst's Motion for Summary Judgement (# 46–1) is granted on Count I of Rocco Palmi's Adversary Counterclaim. The Clerk of the Court is therefore directed to enter judgment against Palmi and in favor of Wisconsin Tool and Ernst on Count I of the Adversary Counterclaim. Ernst's Motion to Strike Portions of Palmi's 12(N) Statement and Portions of the Affidavit In Support is denied as moot (# 62–1).

In addition, the Court directs the Clerk of the Court to enter an Order withdrawing the Reference from Bankruptcy Judge Sonderby.

---

15. Palmi only indirectly raises the issue of qualified privilege, by citing *Jones* and then making reference to the "actual malice" standard. According to *Jones,* the court noted that a qualified privilege may be overcome by showing actual malice on the party of the defendant. *Jones,* 622 F.Supp. at 392 (citation omitted). Palmi's claims that he has evidence of "Ernst's admissions of actual knowledge of falsity." (Palmi Resp. at 4). Palmi's only evidence is his own affidavit (12(N) ¶ 13 citing Palmi affidavit at ¶ 12). Without a factual basis in the record, and considering the uncontroverted 1099 form and other admissions in this case, the Court must conclude that Palmi's statements with respect to Ernst and his admissions are self-serving and therefore insufficient to create a genuine issue of material fact. In *Jones,* the district court noted that "[a]n employer unquestionably has an interest in investigating suspicious conduct by an employee within

his company." *Id.* at 392. Although a statement may be published for purposes of liability, the published statement may be protected by a qualified privilege. *Id.* at 391.

16. Moreover, any implication that the inclusion of the 1099 form and Goldsmith letter in the civil pleadings constituting the basis for this lawsuit constitutes a basis for concluding that Ernst or any other party "published" statements to third parties is meritless. Anything stated or written in a legal proceeding including pleadings "is protected by an absolute privilege against defamation actions, subject only to the qualification that the words be relevant or pertinent to the matters in controversy." *Defend v. Lascelles,* 149 Ill.App.3d 630, 102 Ill.Dec. 819, 821, 500 N.E.2d 712, 714 (4th Dist.), *appeal denied,* 114 Ill.2d 544, 108 Ill.Dec. 415, 508 N.E.2d 726 (1987).